773 F.2d 1377
 249 U.S.App.D.C. 171, 12 O.S.H. Cas.(BNA) 1499,
1984-1985 O.S.H.D. ( 27,390
 William E. BROCK, Secretary of Labor, Petitioner,
v.
L.R. WILLSON & SONS, INC., Respondent, International
Association of Bridge, Structural and Ornamental
Iron Workers, et al., Intervenors.
 No. 84-1471.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 10, 1985.
Decided Oct. 8, 1985.
 
 Laura V. Fargas, Atty., Dept. of Labor, Washington, D.C., of the Bar of the Supreme Court of Pennsylvania, pro hac vice by special leave of the Court. Judith N. Macaluso, Asst. Counsel and Dominique Kirchner, Atty., Dept. of Labor, Washington, D.C., were on brief, for petitioner. Arthur J. Amchan, Atty., Dept. of Labor, Washington, D.C., also entered an appearance for petitioner.
 Edward S. Dorsey, Baltimore, Md., for respondent.
 Elihu I. Leifer, Washington, D.C., for intervenors.
 Before WALD, EDWARDS and STARR, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 The Secretary of Labor petitions here for review of an order issued by the Occupational Safety and Health Review Commission ("OSHRC" or "Commission") under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. Secs. 651-78 (1982), vacating a citation issued to L.R. Willson & Sons, Inc. ("Willson") for failure to use perimeter netting to protect against exterior falls on a structural steel erection site in violation of 29 C.F.R. Sec. 1926.105(a) (1984) [hereinafter Sec. .105(a) ]. We find that the Commission misconstrued our decision in L.R. Willson & Sons, Inc. v. Donovan, 685 F.2d 664 (D.C.Cir.1982) [hereinafter Willson I ] in interpreting Sec. .105(a). That section, properly applied, was violated by Willson's failure to provide any form of protection against exterior fall hazards. Since this is the only conclusion that can be drawn from the record before us, we remand with directions to reinstate the citation against Willson.
 
 I. BACKGROUND
 
 2
 On July 17 and 21, 1980, OSHA Compliance Officer John Wiseman inspected a construction site at 9th and G Streets in Washington, D.C. where Willson was performing steel erection work on the YWCA building. Wiseman observed two employees at the perimeter of the building, approximately ninety and one hundred feet above the ground, who were not wearing safety belts or otherwise protected from the dangers of exterior falls by perimeter netting. A temporary steel floor was in place at the eighth floor level, one and two floors below the two employees, but the deck did not extend beyond the perimeter of the building. The employees were "connectors," ironworkers who climb vertical steel columns where horizontal steel beams are lifted up to them with a crane. They guide the beams into place, bolt them, and then climb out on the beams in order to release the line connecting the beam to the crane.[1] Connectors cannot wear safety belts while connecting because they need mobility in order to avoid being struck and injured by the beams.
 
 
 3
 As a result of the inspection, Willson was issued a number of citations, only one of which is involved here. That citation charged Willson with a serious violation of a general construction industry standard, 29 C.F.R. Sec. 1926.105(a) (1984), which requires that "[s]afety nets shall be provided when workplaces are more than 25 feet above the ground ... where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical." A serious violation exists when "there is a substantial probability that death or serious physical harm could result" from the violation. 29 U.S.C. Sec. 666(k) (1982).
 
 
 4
 The administrative law judge (ALJ) chose not to decide the question of whether 29 C.F.R. Sec. 1926.750(b) (1984) [hereinafter Sec. .750(b) ], a fall protection regulation under the Subpart R steel erection standards,[2] preempted enforcement of the more general construction industry standard in Sec. .105(a). Instead, he concluded that the two standards, "when construed separately and together ... [do not] provide a steel erector with fair warning that he must obey the general standard by installing so-called perimeter nets." A. at 20. The ALJ's notice analysis also rested in part on voluminous record evidence which he felt raised a concern that "lack of enforcement [of Sec. .105(a) ] lulled the industry into a false sense of security." A. at 35. Alternatively, the ALJ found that if Willson was on notice that Sec. .105(a) applied, the company had complied with the regulation by installing temporary floors. A. at 38.
 
 
 5
 OSHRC affirmed the ALJ's decision to vacate the citation, but on different grounds. L.R. Willson & Sons, Inc., 11 O.S.H.Cas. (BNA) 2182 (Rev.Comm'n 1984). First, the Commission concluded that steel erection standard Sec. .750(b) was specifically applicable to the hazard of falling and so preempted enforcement of the general construction standard Sec. .105(a). Id. at 2184. OSHRC acknowledged that its conclusion was contrary to this court's decision in Willson I, and so went on to assume that Sec. .105(a) applied. Purportedly basing its interpretation of Sec. .105(a) on Willson I, the Commission held that use of one of the listed safety devices was "impractical," so as to require use of perimeter netting, only if the device did not provide protection during a substantial portion of the work day. Id. at 2184-85. Using this rationale, the Commission affirmed the ALJ's vacation of the citation, finding that the Secretary had not met his burden of proving the violation because he presented almost "no evidence which would indicate the amount of time during the work day that the employees would work on the outside perimeter." Id. at 2185.
 
 
 6
 This petition for review followed.
 
 II. APPLICABILITY OF Sec. .105(a)
 
 7
 OSHRC's first ground for vacating the citation was that Sec. .105(a) does not apply to fall hazards in the steel erection industry. The rules of preemption, as specified in OSHA regulations, provide that a general construction standard like Sec. .105(a) applies to steel erectors unless another standard is specifically applicable to the same hazard. 29 C.F.R. Sec. 1910.5(c) (1985).[3] In three decisions handed down the same day, OSHRC held that Sec. .105(a) may not be applied in the steel erection industry because a Subpart R steel erection standard, 29 C.F.R. Sec. 1926.750(b) (1984), is specifically applicable to the hazard of falling. Willson, 11 O.S.H.Cas. at 2184; Adams Steel Erection, Inc., 11 O.S.H.Cas. (BNA) 2073, 2074-79 (Rev.Comm'n 1984), rev'd sub nom. Donovan v. Adams Steel Erection, Inc., 766 F.2d 804 (3d Cir.1985); Daniel Marr & Son Co., 11 O.S.H.Cas. (BNA) 2088, 2089 (Rev.Comm'n 1984), rev'd sub nom. Donovan v. Daniel Marr & Son Co., 763 F.2d 477 (1st Cir.1985). This result was a reversal of the Commission's prior position that Sec. .750(b) did not preempt Sec. .105(a) with respect to exterior fall hazards in the steel erection industry. Williams Enters., Inc., 11 O.S.H.Cas. (BNA) 1410, 1419 (Rev.Comm'n 1983), aff'd sub nom. Donovan v. Williams Enters., Inc., 744 F.2d 170, 177-78 (D.C.Cir.1984).
 
 
 8
 While it is not clear whether Willson is even defending this portion of OSHRC's decision any longer, we address the issue briefly in order to permanently lay to rest any doubts the company and the Commission may have as to which regulation governs exterior fall hazards in the steel erection industry. Willson, respondent here and petitioner in Willson I, argued in both instances that Sec. .750(b)(1)(ii) was more specific and preempted the general construction industry standard. In Willson I this court found that Sec. .105(a) was the applicable standard, rejecting the company's argument because "[a] general standard is not preempted unless a specific standard sets forth the measures that an employer must take to protect employees from a particular hazard." 685 F.2d at 670 (emphasis added). The particular hazard at issue in Willson I was exterior falls from above the level of temporary floors or decking,[4] and the court read Sec. .750(b)(1)(ii) to apply only to interior falls because the regulation would be satisfied by the use of temporary flooring and "it appears obvious that temporary flooring protects only against interior falls." Id. at 672. This court has consistently followed Willson I, relying on it to find that Sec. .750(b) did not preempt 29 C.F.R. Sec. 1926.28(a) (1984), another one of the general construction standards, L.R. Willson & Sons, Inc. v. OSHRC, 698 F.2d 507, 511-12 (D.C.Cir.1983), and to affirm OSHRC's aforementioned decision applying Sec. .105(a) to exterior fall hazards in the steel erection industry, Donovan v. Williams Enters., Inc., 744 F.2d 170, 179 (D.C.Cir.1984).
 
 
 9
 On July 20, 1984, however, the Commission announced that it had changed its mind about which regulation governed exterior fall hazards in the steel erection industry. In reviewing the Commission's position as applied in this case, we recognize that an agency is entitled to change course if it gives a principled and rational reason for the reversal. Greyhound Corp. v. ICC, 551 F.2d 414, 416 (D.C.Cir.1977). One court has taken the stricter position that OSHRC cannot, in an adjudicatory proceeding, reject the interpretation given to a regulation by the appellate court for the circuit in which the case arose. Borton, Inc. v. OSHRC, 734 F.2d 508, 510 (10th Cir.1984). In the past, however, this court has been unable to agree on the extent of an agency's authority not to follow a statutory interpretation made by a court of appeals, so it is unclear that we would follow suit. See Yellow Taxi Co. v. NLRB, 721 F.2d 366, 382-83 (D.C.Cir.1983); id. at 384-85 (Wright, J., concurring); id. at 385 (Bork, J., concurring). Fortunately, we do not need to settle the question of OSHRC's general authority to reject circuit precedent, because in this case the Commission clearly exceeded its authority by resting its decision on a rationale which is neither principled nor rational.
 
 
 10
 The Commission's reasoning has already been rejected by appellate courts reviewing the other two Sec. .105(a) steel erection cases handed down the same day as Willson. Adams Steel, 766 F.2d at 807-10; Daniel Marr, 763 F.2d at 480-84. Our decision today makes the judicial response unanimous. Like the other courts, we find that the Commission ignored the teaching of Willson I that exterior and interior falls are different hazards and that Sec. .750(b) protects only against interior falls. Adams Steel, 766 F.2d at 808-09; Daniel Marr, 763 F.2d at 482-83. We also join both courts in finding that the two cases cited by OSHRC in Adams Steel to support its reversal are inapposite.[5] Adams Steel, 766 F.2d at 809; Daniel Marr, 763 F.2d at 483 & n. 9. Finally, we reject the Commission's unsupported and counterintuitive suggestion that the Secretary deliberately chose not to protect steel erection workers from exterior fall hazards.[6] There is really nothing for us to add to the other courts' decisions, other than to express our hope that the Commission will finally accept the unanimous position of three courts of appeals and the Secretary of Labor that Sec. .105(a) does apply to protect workers from exterior fall hazards in the steel erection industry.
 
 III. INTERPRETATION OF Sec. .105(a)
 
 11
 Our task here is to assess whether OSHRC's decision to vacate the citation against Willson was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1982). The first step is to decide whether OSHRC correctly interpreted Sec. .105(a) as applied to the steel erection industry. As in all OSHA cases, we abide by "the wellsettled principle that the Act is to be construed liberally to effectuate its purpose of 'assur[ing] so far as possible ... safe ... working conditions.' " Willson I, 685 F.2d at 674. In cases involving interpretation of regulations, "an agency's interpretation of its own regulations is often of 'controlling weight,' [although] this deference is due only when the interpretation is 'reasonable and consistent with the regulation.' " Miller v. Bond, 641 F.2d 997, 1002 (D.C.Cir.1981) (citations omitted). This principle is not easily adapted to OSHA regulations, however, because OSHA divides responsibilities between the Secretary of Labor, who promulgates the regulations, and the Commission, which adjudicates their meaning in specific cases.[7] Even according the Commission's interpretation the degree of deference we would give to the agency that had promulgated the regulation, however, we could not uphold the interpretation of Sec. .105(a) used to vacate Willson's citation. OSHRC's reading of that section is neither reasonable nor consistent with the language of the regulation, nor is it consistent with the Commission's interpretation of the same regulation in other cases.
 
 
 12
 Section .105(a) requires the use of perimeter netting only when the other listed safety devices are "impractical" to use. OSHRC, purportedly relying on our decision in Willson I, concluded that the Secretary had failed to prove that temporary floors, one of the listed safety devices, were impractical in this case. OSHRC interpreted Willson I to hold that a safety device is impractical only if the Secretary proves that the device did not provide protection during a substantial portion of the work day. Thus, it reasoned, temporary floors were impractical only if employees spent a substantial portion of the work day at the perimeter of the building, a conclusion the Commission said it could not draw from the evidence in the record. 11 O.S.H.Cas. at 2184-85. The analysis which follows explains how OSHRC's reasoning misinterpreted this court's decision in Willson I.
 
 A. The "Not Actually Used" Test
 
 13
 The Willson I court found that Sec. .105(a)'s requirement of perimeter netting was triggered where the listed safety devices were "impractical," meaning "both 'not practical' and 'not actually used.' " 685 F.2d at 675. The "not actually used" prong of the definition of impractical reflects a long line of judicial and Commission decisions holding that Sec. .105(a) is violated if none of the listed safety devices is being used. The Secretary has the burden of proving all the elements of an OSHA violation, Willson I, 685 F.2d at 673, but makes out his "prima facie case as to a violation of Sec. 1926.105(a) by showing that no means of protection listed in the standard was used to protect employees exposed to a fall in excess of 25 feet." Havens Steel Co., 1978 O.S.H.Dec. (CCH) p 22,689 at 27,385 (Rev.Comm'n 1978), aff'd without opinion, 607 F.2d 493 (D.C.Cir.1979). OSHRC has continued to adhere to this definition of a prima facie case under Sec. .105(a) in recent cases. Williams Enters., Inc., 11 O.S.H.Cas. 1410, 1419 (Rev. Comm'n 1983), aff'd sub nom. Donovan v. Williams Enters, Inc., 744 F.2d 170 (D.C.Cir.1984).
 
 
 14
 Courts have similarly held that the Secretary meets his burden under Sec. .105(a) with a showing that none of the listed devices was actually used. Cleveland Consol., Inc. v. OSHRC, 649 F.2d 1160, 1163, 1165 (5th Cir.1981) (affirming Commission finding of serious violation of Sec. .105(a) because connectors had no fall protection); Brennan v. Southern Contractors Service, 492 F.2d 498, 501 (5th Cir.1974) ("failure to use any of such devices is a proper predicate for the imposition of sanctions"). Interpreting the phrase "impractical" in Sec. .105(a) to include "not actually used" is consistent with the language of the regulation and the remedial purpose of the Act. As one court has explained,
 
 
 15
 [T]he regulation contemplates that one of the listed safety devices will be used when the described danger of height is involved.... [T]he standard is not intended to point out escape routes by which no device need be used if one of the alternative devices can be shown to be practical even though not in fact used.
 
 
 16
 Southern Colo. Prestress Co. v. OSHRC, 586 F.2d 1342, 1350 (10th Cir.1978) (emphasis in original).
 
 
 17
 OSHRC did not analyze Sec. .105(a) in terms of the "not actually used" test, although the Secretary contends that this is the applicable standard. Willson's argument, implicitly adopted by the Commission, is that temporary floors--one of the listed devices--were used. What the company--and the Commission--have overlooked is that Sec. .105(a) applies to the steel erection industry only in part. A more specific regulation, Sec. .750(b), continues to govern interior fall hazards at steel erection sites. In applying the "not actually used" test when Sec. .105(a) has been partially preempted, the question to be asked is whether one of the listed devices designed to protect against the cited hazard was actually used.
 
 
 18
 This interpretation of the word "impractical" as refined by the "not actually used" test is supported by both the Willson I preemption analysis and by prior interpretations of Sec. .105(a). Because more general standards only apply "to the extent that none of such particular standards applies," 29 C.F.R. Sec. 1910.5(c)(2) (1985) (emphasis added), the Willson I court held that the issue in preemption analysis "is not whether Subpart R [on steel erection] provides any exterior fall protection standards, but rather whether it provides standards to guard against the particular exterior fall hazard for which Willson was cited," 685 F.2d at 672. Those parts of Sec. .105(a) which are not preempted by Sec. .750(b) are supposed to fill the gaps left by the Subpart R regulations, so any fall protection provided under Sec. .105(a) must be considered "practical" only if it protects "against the particular exterior fall hazard" that Sec. .750(b) does not guard against.
 
 
 19
 Prior interpretations of Sec. .105(a) also support a reading that focuses on the ability of a listed device to provide protection against the cited fall hazard. The Commission has acknowledged that Sec. .105(a) "is not satisfied simply by the use of one of the devices listed in that section without regard to whether such use provides adequate fall protection to employees." National Indus. Constructors, Inc., 9 O.S.H.Cas. (BNA) 1871, 1872 (Rev. Comm'n 1981). Accord OSHA Instruction STD 3-3.1 (July 18, 1983), reprinted in [1982-83 Developments] Empl. Safety & Health Guide (CCH) p 12,855 at 17,165 (Secretary's enforcement directive which specifies that "[t]he requirements of [Sec. .105(a) ] are met only if use of one of the listed devices provides adequate fall protection to employees."). Adequate fall protection has not been provided merely because one of the listed devices has been used. Morgan & Culpepper, Inc. v. OSHRC, 676 F.2d 1065, 1069 (5th Cir.1982) (use of scaffolds not a defense). Instead, for one of the listed devices to provide adequate or practical fall protection that device must be capable of providing protection against the type of hazard to which employees are exposed.
 
 
 20
 The easiest way to analyze Sec. .105(a) when it has been partially preempted by Sec. .750(b) is to cross off the Sec. .105(a) list those safety devices which do not protect against the cited hazard, in this case exterior falls from above temporary floors. While no other court has explicitly used this methodology of crossing devices such as temporary floors off the Sec. .105(a) list, other decisions have adopted this interpretation sub silentio by finding Sec. .105(a) violations by steel erectors even though temporary flooring was being used. Donovan v. Adams Steel Erection, Inc., 766 F.2d 804, 805 (3d Cir.1985) (floor 20 feet below employees); Donovan v. Daniel Marr & Son, Inc., 763 F.2d 477, 479 (1st Cir.1985) (floor 40 feet below employees); Donovan v. Williams Enters., Inc., 744 F.2d 170, 174 (D.C.Cir.1984) (floors 40, 47, and 58 feet below employees).[8]
 
 
 21
 Temporary floors are effectively omitted from the Sec. .105(a) list when that regulation is cited in response to an exterior fall hazard in the steel erection industry, because such floors only protect against interior falls. Because none of the other devices listed in Sec. .105(a) were actually used to protect against exterior fall hazards, see infra at 1388, Willson violated Sec. .105(a).
 
 
 22
 B. The "Substantial Portion of the Work Day" Test
 
 
 23
 OSHRC did not undertake this type of analysis to determine whether any of the safety devices listed in Sec. .105(a) were actually used to protect against the hazard for which Willson was cited. Instead, the Commission treated temporary floors as being actually used and looked to the other portion of the Willson I definition of impractical. Actual use alone does not fulfill the requirements of Sec. .105(a) so as to excuse an employer from using safety nets: the protection device used must also be "practical." The court in Willson I held that whether the safety belts used in that case were practical as protective devices depended on the amount of time during the work day that they could be used. The court's conclusion was that "the inability to use safety belts during a significant period of the work day renders them 'impractical' within the meaning of section .105(a)." 685 F.2d at 675.
 
 
 24
 OSHRC misinterpreted the "substantial portion of the work day" test, id., by applying it where no listed device was actually used. The test was applied in Willson I only because there was evidence in the record that one of the listed devices which could protect against exterior fall hazards--safety belts--was actually being used. The "substantial portion of the work day" test plays no role when no exterior fall protection device is actually used; as explained previously, see supra at p. 1383, the Secretary makes a prima facie case of a Sec. .105(a) violation just by showing that no such devices were used. The Commission therefore erred in requiring the Secretary to go beyond its showing that no exterior fall protection devices were actually used and prove that employees were exposed to exterior fall hazards for a substantial portion of the work day.
 
 
 25
 OSHRC's interpretation of Sec. .105(a) allows employers to expose employees to exterior fall hazards without providing any form of protection as long as the hazard does not exist for a substantial portion of the work day. While the Willson I court rejected the Secretary's argument that Sec. .105(a) requires employers "to provide continuous fall protection by means of a combination of the fall protection devices listed therein," 685 F.2d at 674, the court did not sanction the practice of using no fall protection devices for extended periods of time. Because Willson I was "not a case where the evidence establishes that the nature of the work precluded the use of safety belts most or even some of the time," id. at 675, the court concluded that the employer could not be required to provide nets to bolster the practical protection already provided by safety belts for a substantial portion of the work day. That holding does not, however, mean that nets are not required when the employer's failure to provide any form of fall protection has the effect of precluding the use of protective devices all of the time.
 
 
 26
 The Commission's decision effectively excuses employers from the requirement of providing one of the listed devices if the exterior fall hazard happens to be of short duration. This interpretation of Sec. .105(a) is not supported by the language of the regulation, which requires the use of one of the listed devices without regard to the duration of the fall hazard.[9] Such an interpretation has correctly been rejected by the Fifth Circuit. Morgan & Culpepper, Inc. v. OSHRC, 676 F.2d 1065, 1069 (5th Cir.1982) ("the existence of an unsafe condition for only a short duration" is not a defense to a charge of violating Sec. .105(a)); see also Austin Bldg. Co. v. OSHRC, 647 F.2d 1063, 1067 (10th Cir.1981) (holding that a similar regulation requiring use of personal protective equipment to protect against exterior falls of less than 25 feet "makes no exception for hazardous conditions of short duration"). OSHRC's interpretation also violates the principle that "[OSHA] standards must be construed ... to protect the employees." GAF Corp. v. OSHRC, 561 F.2d 913, 915 (D.C.Cir.1977).
 
 
 27
 This court has not applied the "substantial portion of the work day" test of impracticability when no protection has been provided against exterior falls; thus, we recently affirmed a citation under Sec. .105(a) without discussing the test or the duration of the hazard. Williams Enterprises, 744 F.2d at 177-79. Similarly, two appellate courts, which adopted the reasoning of Willson I in analyzing the relationship between Sec. .105(a) and Sec. .750(b), reinstated citations under Sec. .105(a) in the steel erection industry without discussing the "substantial portion of the work day" test. Adams Steel, 766 F.2d at 807-10; Daniel Marr, 763 F.2d at 480-84. As in those cases, we need not use the "substantial portion of the work day" test in applying the Willson I interpretation of Sec. .105(a) to this case, because no exterior fall protection devices were actually used.[10]
 
 IV. NOTICE
 
 28
 Willson argues that the company "did not have reasonable notice as to the Secretary's interpretation of the requirements of Section 105(a) ... [because] despite the fact that the use of perimeter nets by steel erectors nationwide has been limited to a few construction projects, the Secretary has not enforced the interpretation of the regulations he advances here." Willson Brief at 9 n. 6. The ALJ had similarly based its decision vacating the citation on Willson's lack of notice, finding both that Sec. .105(a) was too vague when read together with Sec. .750(b) to provide adequate notice, A. at 20, 37-38, and that "lack of enforcement lulled the industry into a false sense of security," id. at 35. Willson's notice argument, while made only sketchily, seems to involve two separate claims. The first contention is that Sec. .105(a) is too vague, either facially or when read in conjunction with Sec. .750(b), to provide adequate notice. The second argument is that the Secretary's failure to apply his interpretation of Sec. .105(a) to the steel erection industry in the face of widespread non-compliance with that regulation deprived Willson of adequate notice. We reject both of these arguments and find that Willson had both actual and constructive notice that Sec. .105(a) applied in the steel erection industry and required use of one of the appropriate listed devices to protect against exterior falls.
 
 
 29
 Willson had actual notice that Sec. .105(a) required steel erectors to provide exterior fall protection because of a previous citation and an earlier inspection. The same company that is the respondent here was the petitioner in Willson I and received the Sec. .105(a) citation at issue in that case several months before the July, 1980, inspection in this case. See Willson I, 685 F.2d at 667-68. While the Willson I court admitted that "the regulations involved teeter precariously on the edge of the wall that divides adequate notice from impermissible vagueness," 685 F.2d at 676, the court found its interpretation of Sec. .105(a) to be reasonable and to adequately address Willson's notice concerns, and so proceeded to apply that interpretation to Willson's violation, id. at 674-76.[11] In addition, Willson was put on actual notice of the requirements of Sec. .105(a) when OSHA inspector John Wiseman spoke to a Willson vice president during a previous inspection about the necessity of using perimeter nets on structural steel jobs. A. at 187-88.
 
 
 30
 Willson did not have to be on actual notice, however, because "[t]he constitution does not demand that the employer be actually aware that the regulation is applicable to his conduct." Faultless Div. v. Secretary of Labor, 674 F.2d 1177, 1185 (7th Cir.1982). A regulation is not so vague as to violate due process requirements as long as "the standard was sufficient to put [the employer] on notice as to the proscribed conduct." Cedar Constr. Co. v. OSHRC, 587 F.2d 1303, 1306 (D.C.Cir.1978). Section 105(a) provides clear notice that an employer is at least required to use one of the listed devices. In rejecting a notice challenge to a Sec. .105(a) violation, the Commission has found that "it is clear from the wording of the standard that the employer is under an obligation to provide employees with some means of fall protection through use of these alternative devices or provision of safety nets." National Indus. Constructors, Inc., 9 O.S.H.Cas. (BNA) 1871, 1875 (Rev. Comm'n 1981). The language of Sec. .105(a) is sufficiently clear to put Willson on notice that the regulation proscribes a failure to provide any form of exterior fall protection.
 
 
 31
 Willson's argument that the industry's practice was not to use perimeter netting alludes to cases in which courts have remedied facial vagueness in OSHA standards by looking to industry custom and practice in order to derive a standard of conduct as to which the employer had notice. These courts have, however, used this practice "only when a specific standard of expected employer conduct is proposed to be derived from a very general statutory or regulatory command." Faultless, 674 F.2d at 1186-87. The regulatory command of Sec. .105(a) is specific enough so that no reference to industry practice is necessary. Daniel Marr, 763 F.2d at 484.
 
 
 32
 If Willson is arguing that widespread industry practice or the Secretary's failure to enforce the regulation in effect bars enforcement of Sec. .105(a) against the company, we soundly reject that argument. Even in cases in which industry practice is considered in interpreting OSHA standards, that practice is not dispositive when the industry has failed to provide necessary protections. This court has warned that it will act " 'to prevent an industry, which fails to take sufficient precautionary measures against hazardous conditions, from subverting the underlying purposes of the Act.' " L.R. Willson & Sons, Inc. v. OSHRC, 698 F.2d 507, 513 n. 17 (D.C.Cir.1983) (quotingBristol Steel & Iron Works, Inc. v. OSHRC, 601 F.2d 717, 723 (4th Cir.1979)). The Seventh Circuit has similarly rejected an employer's argument that it and the whole industry lacked notice because of the Secretary's failure to prosecute violations:
 
 
 33
 [T]he argument for reliance on industry practice would permit employers to avoid compliance with specific safety mandates by relying on the (perhaps equally objectionable) practices of their peers. Nothing in the OSH Act or its legislative history requires or permits the Secretary to await an industry consensus about unsafe conditions before moving to enforce.
 
 
 34
 Faultless, 674 F.2d at 1187 (citations omitted).
 
 V. CONCLUSION
 
 35
 This court can instruct OSHRC to reinstate the citation, rather than remanding for further proceedings, if only one conclusion is supportable on the record before us. Donovan v. Stafford Constr. Co., 732 F.2d 954, 961 (D.C.Cir.1984); see also Marshall v. Western Elec., Inc., 565 F.2d 240, 246 (2d Cir.1977). To prove a violation of Sec. .105(a), the Secretary must show only that (1) the workplace is twenty five feet above the ground and (2) none of the listed safety devices are practical, meaning that they are either not used or are used but not practical because they do not protect against the cited fall hazard for a substantial portion of the work day. These are findings we can easily make on this record.
 
 
 36
 In fact, the record establishes a violation of Sec. .105(a) even if we accept Willson's completely unsupported allegation that safety belts are practical when connectors are at the perimeter but not actually doing connecting, because belts were not actually used. In fact, this record is devoid of any evidence that any protection against exterior falls was ever accorded to connectors. Perimeter nets were never used. The ALJ found that "perimeter nets were not in use at the worksite," A. at 21, and Willson's superintendents told the OSHA inspector that there was no netting at the job site, A. at 82. Nor is there any record evidence that safety belts were ever worn by connectors. Both OSHA inspector John Wiseman and Willson Vice President of Operations James Willson testified that it was not safe for connectors to use safety belts while connecting because they need mobility to avoid being injured by steel beams. A. at 81-82, 139-41. Wiseman also testified that the two connectors he saw at the perimeter of the building were not wearing safety belts. A. at 68. The only conclusion to be drawn from this record is that the sole fall protection device in use at the job site was temporary flooring, which does not provide protection against exterior falls.
 
 
 37
 Willson was cited for a serious violation of Sec. .105(a). A serious violation exists "if there is a substantial probability that death or serious physical harm could result." 29 U.S.C. Sec. 666(k) (1982). This court has recently affirmed that the Secretary has the burden of establishing the seriousness of a violation and that OSHRC's determination as to seriousness controls " '[i]f evidence is presented that a practice could eventuate in serious physical harm upon other than a freakish or utterly implausible occurrence of circumstances.' " Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575, 589 (D.C.Cir.1985) (quoting National Realty & Constr. Co. v. OSHRC, 489 F.2d 1257, 1265 n. 33 (D.C.Cir.1973)). Although neither the ALJ nor the Commission reached the issue of the seriousness of this violation, the ALJ affirmed serious violations of two other standards because employees were exposed to falls of 11 feet with the possibility of sustaining serious injuries such as broken bones. A. at 43-44. The Secretary also presented the opinion testimony of the inspector that the 80 foot fall hazard could cause death or serious physical harm, A. at 84, and Willson did not deny that employees would fall 88 feet if they were not wearing safety belts and fell to the exterior of the building, id. at 143. We find that the Secretary has established a serious violation of Sec. .105(a) because there is a substantial probability that death or serious physical harm could result from a fall from the heights involved here.[12] Cf. Adams Steel Erection, Inc., 11 O.S.H.Cas. (BNA) 2073, 2082-83 (Rev. Comm'n 1984) (Comm'r Cleary, dissenting) (would affirm ALJ's finding that exterior fall hazards of 30 and 40 feet would have caused serious injury or death to steel erection workers), rev'd sub nom. Donovan v. Adams Steel Erection, Inc., 766 F.2d 804, 812 (3d Cir.1985) (reinstating the ALJ's determinations).
 
 
 38
 The citation alleging a serious violation of 29 C.F.R. Sec. 1926.105(a) is supported by substantial evidence in the record from which only one conclusion can be drawn and it must therefore be reinstated.[13] The Secretary has proven that Willson created a substantial probability that a worker would suffer death or serious physical harm by failing to provide any protection against exterior falls from a workplace more than 25 feet above the ground. The citation vacated by OSHRC is hereby remanded with directions that it be reinstated, and the petition for review is
 
 
 39
 Granted.
 
 
 
 [1]
 Wiseman testified that, while he was not certain what the men were doing at the time of observation, he was sure that they were connectors and he assumed they had been connecting at the perimeter of the building since he also observed that steel beams had in fact been connected there. Appendix ("A.") at 111, 114
 
 
 [2]
 The regulation provides that "[o]n buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet." 29 C.F.R. Sec. 1926.750(b)(1)(ii) (1984). Another subsection requires the use of a tightly planked and substantial floor within two stories or 30 feet below erection work and provides that Sec. .750(b)(1)(ii) applies where such a floor is not practicable. 29 C.F.R. Sec. 1926.750(b)(2)(i) (1984)
 
 
 [3]
 The Secretary has promulgated regulations on the applicability of standards which provide that
 (1) If a particular standard is specifically applicable to a condition ... it shall prevail over any different general standard which might otherwise be applicable to the same condition....
 (2) On the other hand, any standard shall apply according to its terms to any employment and place of employment in any industry, even though particular standards are also prescribed for the industry, as in ... Subpart R of this part, to the extent that none of such particular standards applies.
 
 
 [29]
 C.F.R. Sec. 1910.5(c) (1985)
 
 
 [4]
 The Willson I court restricted its analysis to exterior falls from above the level of temporary floors, excluding exterior falls while standing on temporary floors because one subsection of Sec. .750(b), 29 C.F.R. Sec. 1926.750(b)(1)(iii) (1984), requires use of railings at the perimeter of temporary floors which would provide exterior fall protection for workers standing on the floor. Willson I, 685 F.2d at 672-73. The court may have been trying to distinguish Brennan v. OSHRC, 513 F.2d 713 (8th Cir.1975) (Ron Fiegen, Inc.), which held that Sec. .105(a) does not require use of safety nets when employees are working on a temporary floor, regardless of the safety features of such a floor, id. at 715. While the case before us involves the same type of exterior fall hazard as in Willson I --one from above the level of a temporary floor--we note that the Commission has repudiated the interpretation of Sec. .105(a) adopted by the Eighth Circuit in Fiegen and consistently held that the standard requires the use of safety nets to protect employees standing on temporary floors which lack perimeter protection devices. See, e.g., S & H Riggers & Erectors, Inc., 7 O.S.H.Cas. (BNA) 1260, 1260-61 (Rev. Comm'n 1979), rev'd on other grounds, 659 F.2d 1273 (5th Cir.1981). This interpretation of Sec. .105(a) has been applied in cases involving exterior fall hazards from temporary floors in the steel erection industry. See, e.g., Midwest Steel Erection Co., 8 O.S.H.Cas. (BNA) 1538, 1538-39 (Rev. Comm'n 1980)
 
 
 [5]
 The two cases on which the Commission relied, Daniel Int'l Corp. v. Donovan, 705 F.2d 382 (10th Cir.1983), and Builders Steel Co. v. Marshall, 622 F.2d 367 (8th Cir.1980), do not establish that Sec. .750(b) applies to exterior fall hazards in the steel erection industry. In Daniel the court applied Sec. .750 to a steel erection site, but without considering the applicability of general safety standards. 705 F.2d at 386. In Builders Steel the court held that Sec. .750(b)(2)(i) applied instead of both Sec. .750(b)(1)(ii) and Sec. .105(a), 622 F.2d at 369-70, but the hazard at issue was an interior fall, Builders Steel Co. v. Marshall, 575 F.2d 663, 665 (8th Cir.1978); see Willson I, 685 F.2d at 671 (distinguishing Builders Steel ). In both cases cited by OSHRC, the courts were satisfied that Sec. .750(b) provided the workers with adequate protection from the fall hazards at issue, see Daniel Marr, 763 F.2d at 483 n. 9, while in this case that standard does not protect against the hazard of exterior falls from above the temporary floors
 
 
 [6]
 In Williams Enterprises, 11 O.S.H.Cas. at 1416, the Commission found "nothing in the steel erection standards which suggests that the Secretary intended to deny to steel erectors feasible protection otherwise available, that is, available outside Subpart R, against falling ... to the ground outside a building." Fifteen months later, however, the Commission mysteriously concluded that "[t]he absence of a specific perimeter safety net requirement in subpart R may well have been the result of a deliberate decision by the drafters of subpart R not to require such protection." Adams Steel, 11 O.S.H.Cas. at 2077. We agree with the dissent by Commissioner Cleary in Adams Steel and with the Third Circuit panel opinion that the Commission was right the first time and there is no evidence that the Secretary intended to leave steel erectors so unprotected. Id. at 2084 (Comm'r Cleary, dissenting); Adams Steel, 766 F.2d at 810. The Commission's inference that the Secretary intended to leave steel erection workers unprotected from exterior falls is especially unconvincing given the Secretary's recent enforcement directive advising compliance officers that "[f]or all types of construction, including steel erection, exterior falling hazards shall be cited ... under 1926.105(a) when the potential falling distance is greater than 25 feet." OSHA Instruction STD 3-3.1 (July 18, 1983), reprinted in [1982-83 Developments] Empl. Safety & Health Guide (CCH) p 12,855 at 17,166
 
 
 [7]
 Appellate courts have split as to whether the Secretary or OSHRC is entitled to deference when their respective interpretations of a regulation differ. The Fourth, Sixth, Eighth and possibly Second Circuits favor the Commission; the First, Fifth, and Tenth Circuits favor the Secretary. See discussion in Donovan v. A. Amorello & Sons, Inc., 761 F.2d 61, 64-66 (1st Cir.1985). This court has never decided who deserves deference when the Secretary's interpretation conflicts with OSHRC's. One case held that "[because] the Secretary is charged by law with administering [OSHA] and the regulations supporting it ... his interpretation of the regulation 'becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation,' " GAF Corp. v. OSHRC, 561 F.2d 913, 915 (D.C.Cir.1977) (citations omitted), but in that case OSHRC had concurred in the Secretary's interpretation of the OSHA standard. See also Donovan v. A.A. Beiro Constr. Co., 746 F.2d 894, 905 (D.C.Cir.1984) (affirming ALJ's reasonable, plain meaning interpretation of an OSHA regulation despite Secretary's disagreement, where the Commission did not review the ALJ's opinion). As we note in text, we need not reach this question because OSHRC's interpretation would be rejected even if it were accorded the full measure of deference due an agency which had drafted the regulation
 
 
 [8]
 In both Daniel Marr and Williams Enterprises the temporary flooring did not adequately protect against interior falls of over 25 feet and in both cases the employers were also cited under Sec. .750(b) for interior fall hazards. Daniel Marr, 763 F.2d at 479; Williams Enterprises, 744 F.2d at 174-75. Contrary to Willson's argument, however, the inability of the temporary flooring to provide any form of fall protection in these cases does not explain the courts' failure to consider temporary floors as an adequate protection against exterior falls under Sec. .105(a). Both courts recognized the distinction between interior and exterior fall hazards and omitted temporary floors in their consideration of Sec. .105(a), even though such floors are listed in that regulation
 
 
 [9]
 Although there is no exception to Sec. .105(a) for fall hazards of short duration, there is a de minimis exception built into all OSHA regulations by the Act, which provides that the Secretary may issue notices instead of citations "with respect to de minimis violations which have no direct or immediate relationship to safety or health." 29 U.S.C. Sec. 658(a) (1982). Such a notice acknowledges that a violation has occurred without requiring abatement or imposing a penalty. Donovan v. Daniel Constr. Co., 692 F.2d 818, 821 (1st Cir.1982). The exterior fall hazard in this case does not, however, fall within the category of de minimis violations because it has a direct and immediate relationship to safety. See infra at 1388-89; see also Turner Communications Corp. v. OSHRC, 612 F.2d 941, 944-45 (5th Cir.1980) (violation which is serious is not de minimis )
 
 
 [10]
 We express no opinion as to whether the Commission properly interpreted the "substantial portion of the work day" test by looking at the portion of the entire work day rather than the time during the work day when employees were actually exposed to an exterior fall hazard
 
 
 [11]
 The court did, however, urge the Secretary to clarify Sec. .105(a) by issuing a program directive. Willson I, 685 F.2d at 676. The Secretary has done so, although only after Willson was issued the citation involved here. The Secretary's enforcement directive clearly establishes that Sec. .105(a) is to be cited for exterior fall hazards at steel erection sites and that compliance requires use of one of the listed devices in a manner which provides adequate fall protection. OSHA Instruction STD 3-3.1 (July 18, 1983), reprinted in [1982-83 Developments] Empl. Safety & Health Guide (CCH) p 12,855 at 17,165-66
 
 
 [12]
 This court can rule on the seriousness of the violation although neither the ALJ nor OSHRC reached the issue, because we are convinced that "a remand on this issue would serve no purpose ... [and] that only one conclusion would be supportable." Stafford Construction, 732 F.2d at 961. Other courts have similarly reinstated OSHA citations in the absence of findings by the ALJ or OSHRC as to the degree of seriousness of the violation. See Donovan v. Capital City Excavating Co., 712 F.2d 1008, 1010 (6th Cir.1983) (reversing ALJ and finding violation to be willful); Usery v. Marquette Cement Mfg. Co., 568 F.2d 902, 910-11 (2d Cir.1977) (reversing both ALJ and OSHRC and ordering reinstatement of serious violation unless rebuttal evidence is offered in response to amendment of citation)
 
 
 [13]
 Willson apparently raised some affirmative defenses in the proceeding below, but did not argue them to this court. Even if the company had claimed any affirmative defenses, its claims could not be supported on this record. Cf. Stafford Construction, 732 F.2d at 961 (court can rule on affirmative defenses not reached by ALJ or agency based on record before it). The "impossibility" (or infeasibility) defense asserts that installation of the safety nets would have been technologically or economically infeasible. Donovan v. Williams Enters. Inc., 744 F.2d 170, 178 (D.C.Cir.1984). There is, however, no evidence in the record as to the economics of netting and there is unrebutted evidence that such netting was technologically feasible; the OSHA inspector described several different perimeter netting systems which could have been used. A. at 85-90. Willson's evidence on this defense simply established that some steel erection companies do not use netting because they think it is not required; none of his witnesses said use of perimeter netting was not feasible. A second potential affirmative defense is that the use of netting would present a "greater hazard" to workers than having no netting. One element of that defense, however, is that the company has tried to obtain a variance from application of regulation. Williams Enterprises, 744 F.2d at 178, n. 12. There is no indication in the record that Willson attempted to obtain a variance