70 F.3d 131
 315 U.S.App.D.C. 30, 64 USLW 2345, 17
O.S.H. Cas. (BNA) 1439,
1996 O.S.H.D. (CCH) P 30,939
 AMERICAN BRIDGE/LASHCON, a Joint Venture, Petitioner,
v.
Robert B. REICH, Secretary of Labor, United States
Department of Labor and, Occupational Safety and
Health Review Commission, Respondents.
 No. 94-1557.
 United States Court of Appeals,
 District of Columbia Circuit.
Argued Sept. 14, 1995.
Decided Nov. 21, 1995.
 
 Richard R. Nelson, II, Pittsburgh, PA, argued the cause for petitioner, with whom Wayne C. Holcombe was on the briefs.
 Ronald J. Gottlieb, United States Department of Labor, Pittsburgh, PA, argued the cause, for respondents, with whom Joseph M. Woodward, Associate Solicitor, and Ann S. Rosenthal, Appellate Counsel, United States Department of Labor, were on the brief for respondents. Barbara U. Werthmann, Counsel, United States Department of Labor, entered an appearance for respondents.
 Before: EDWARDS, Chief Judge, SENTELLE and TATEL, Circuit Judges.
 TATEL, Circuit Judge:
 
 
 1
 The Secretary of Labor cited American Bridge/Lashcon for violating safety regulations designed to protect workers from falls and to reduce the hazards from stored oxygen cylinders. The Occupational Safety and Health Review Commission sustained the citations and assessed fines. Relying on our decision in L.R. Willson & Sons, Inc. v. Donovan, 685 F.2d 664, 675 (D.C.Cir.1982) ("Willson I "), American Bridge argues that, because it protected its workers during a substantial portion of the workday, it did not violate the fall protection regulations. The cylinders, it claims, were not "in storage" within the meaning of the oxygen cylinder regulation. Holding that Willson I 's "substantial portion of the work day" test applies only where workers face unusual or unpredictable situations, and finding such situations absent here, we sustain the fall protection citation. We also conclude that the Commission's finding that the cylinders were "in storage" is consistent with agency standards and supported by substantial evidence.
 
 I.
 
 2
 Petitioner, American Bridge/Lashcon, is a joint venture formed to erect the structural steel in a new office complex in Hoffman Estates, Illinois. According to its design, the complex would include a multi-story office building with parking garages on the east and west sides. Pedestrian walkways would connect the garages to the building.
 
 
 3
 To construct the walkways, American Bridge erected two levels of horizontal steel beams, one to support the floors of the future walkways and the other to support their roofs. This case focuses on the beams erected to support the roof of the walkway connecting the west garage to the office building. The roof beams were about 75 to 100 feet long, 13 inches wide, and 28 feet above the ground. To protect employees working on the beams, American Bridge installed a one-half inch thick horizontal cable a few feet above the roof beam. Extending from the west garage to the office building, the cable was anchored at both ends and secured by four intermediate posts. While working on the walkway, workers "tied-off" to the cable: that is, they attached one end of a connector known as a lanyard to the cable and the other end to a safety belt worn around the waist.
 
 
 4
 Workers also used the roof beam as a temporary walkway to get supplies and food. When using the beam for these purposes, workers did not tie-off. Instead, they held onto the cable or placed their arms over it as they walked. This was consistent with American Bridge policy requiring workers to tie-off only when stationed.
 
 
 5
 During a routine inspection, an Occupational Safety and Health Administration compliance officer saw a worker who was not tied-off walk across the roof beam. No safety net was underneath the beam. The Secretary of Labor cited American Bridge for violating 29 C.F.R. Sec. 1926.105(a) (1994). Section 105(a), promulgated pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. Secs. 651-678 (1988 & Supp. V 1993), requires:
 
 
 6
 Safety nets shall be provided when workplaces are more than 25 feet above the ground ... where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.
 
 
 7
 The Secretary also cited American Bridge for improperly storing an oxygen cylinder next to a cylinder filled with propane gas. Like other steel erectors, American Bridge uses oxygen and propane gas to weld and trim steel. At the time of the inspection, workers were not using the cylinders, hoses were not connected to either, and the cylinders were capped. The Secretary cited American Bridge for violating an OSHA regulation that requires the separation of oxygen cylinders "in storage" from combustible materials, including gas cylinders, by a minimum of 20 feet or by a fire wall. 29 C.F.R. Sec. 1926.350(j) (1994).
 
 
 8
 American Bridge challenged both citations, along with three others not at issue in this appeal, before the Occupational Safety and Health Review Commission. Following a hearing, an administrative law judge vacated all five citations. American Bridge/Lashcon, J.V., OSHRC Docket No. 91-0633, 1992 WL 50928 (ALJ June 28, 1994). The ALJ found that American Bridge had provided adequate fall protection by requiring employees to tie-off while stationed and working on the beam. Id., slip op. at 7, 1992 WL 50928, at * 5. Finding that workers' trips across the beam totaled about twenty a day, each taking less than a minute, and relying on our decision in Willson I, the ALJ concluded that because workers tied-off for a substantial portion of the workday, American Bridge did not have to provide fall protection for them while walking across the beam. Id. The ALJ also found that the cylinders were not "in storage" within the meaning of the regulation because workers had left them out for immediate use and were likely to use them soon. Id., slip op. at 9-10, 1992 WL 50928, at * 6-7.
 
 
 9
 The Commission reversed the ALJ, reinstated the citations, and assessed $560 in penalties for inadequate fall protection and $240 for improper cylinder storage. Secretary of Labor v. American Bridge/Lashcon, J.V., OSHRC Docket No. 91-633 (June 28, 1994), 16 O.S.H.Cas. (BNA) 1867, 1870 (Rev.Comm'n 1994). With respect to the fall protection citation, the Commission concluded that section 105(a) "requires protection against hazards even though they are of short duration." Id. at 1868. According to the Commission, providing fall protection for a substantial portion of the workday constitutes full compliance with section 105(a) only in "extremely limited" circumstances. Id. Applying these standards, the Commission ruled that the regulations required fall protection--safety nets or one of the other listed devices--for workers crossing the beam. Id. The Commission reinstated the cylinder citation, finding that because the cylinders "had not been used during the previous day and might not have been used for another day or two," they were "in storage" within the meaning of the regulation. Id. at 1869. American Bridge petitions for review of the Commission's order.
 
 II.
 
 10
 The standard for appellate review of Commission decisions is set forth in S.G. Loewendick & Sons, Inc. v. Secretary of Labor, 70 F.3d 1291, 1293-95 (D.C.Cir.1995), an appeal from a Commission order that this court also decides today. We accept the Commission's findings of fact if supported by substantial evidence in the record considered as a whole. 29 U.S.C. Sec. 660(a) (1988); Century Steel Erectors, Inc. v. Dole, 888 F.2d 1399, 1403 (D.C.Cir.1989). We set aside the Commission's application of legal standards to facts only if it is arbitrary, capricious, an abuse of discretion, or contrary to law. 5 U.S.C. Sec. 706(2)(A) (1994); Century Steel, 888 F.2d at 1403. We give deference to the Secretary's reasonable interpretation of agency regulations. See Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 158, 111 S.Ct. 1171, 1179, 1180, 113 L.Ed.2d 117 (1991).
 
 FALL PROTECTION
 
 11
 Relying on our decision in Willson I, American Bridge argues that section 105(a) requires fall protection only during a substantial portion of the workday. Because workers tied-off to the cable while stationed and were without fall protection only during their brief trips across the walkway beam, American Bridge contends that the workers had adequate fall protection for a substantial portion of the workday.
 
 
 12
 American Bridge misreads Willson I. Like this case, Willson I involved a citation for failing to provide fall protection to workers erecting steel. According to section 105(a), a company must provide safety nets if tying-off or if one of the other listed safety devices is "impractical." In Willson I, workers generally tied-off while erecting steel. They were not tied-off on the day of the OSHA inspection, however, because "unusually high winds" had twisted the steel structure and loosened bolt connections, making tie-off difficult. Willson I, 685 F.2d at 673. According to the Secretary, because the workers could not tie-off at all times, tying-off was "impractical" under section 105(a), thus requiring the employer to provide safety nets. Id. at 674. We disagreed, holding that because the workers tied-off while erecting steel for a substantial portion of the workday, their failure to do so for a short time during the "concededly 'unusual' circumstances" caused by the wind did not make tying-off "impractical." Id. at 673, 675. Thus, the company's failure to provide safety nets did not violate the regulation.
 
 
 13
 Our subsequent decisions make clear that Willson I is limited to rare situations involving unexpected or unusual circumstances. In Brock v. L.R. Willson & Sons, Inc., 773 F.2d 1377 (D.C.Cir.1985) ("Willson III "), the company failed to provide fall protection to workers known as "connectors," whose jobs were to erect steel on the perimeter of a building. Finding that the Secretary failed to prove that connectors spent a substantial portion of the workday at the building perimeter, the Commission concluded that none of the safety devices was "impractical." Id. at 1383. We reversed, holding that when "no protection has been provided against exterior falls," the "substantial portion of the work day" test is inapplicable. Id. at 1386. We read section 105(a) to require fall protection even if the fall hazard "happens to be of short duration." Id. In Century Steel, we held that the "substantial portion of the workday" test was inapplicable where the company failed to provide any fall protection to workers performing a particular task requiring mobility: dismantling temporary scaffolding by burning off "tack welds" over a two-day period. Century Steel, 888 F.2d at 1404. Even though workers tied-off while stationary, we held that their failure to tie-off while performing the discrete task of burning off tack welds violated section 105(a). Id.
 
 
 14
 Taken together, Century Steel and Willson III support the Commission's holding here that the "substantial portion of the workday" test applies only in "extremely limited" circumstances, and that section 105(a) requires protection against each discrete fall hazard, even if of short duration. American Bridge/Lashcon, 16 O.S.H.Cas. (BNA) at 1868. That workers tied-off while stationed on the beam does not excuse American Bridge from providing adequate fall protection to them while crossing the beam. Walking across the beam is not at all like the unpredictable and short-term hazard created by the windstorm in Willson I. Like burning off tack welds in Century Steel and connecting steel on the building perimeter in Willson III, crossing the beam is a discrete and predictable task. It thus requires fall protection, even though workers tie-off during a substantial portion of the workday while performing their primary task--steel erection.
 
 
 15
 American Bridge next argues that even if it cannot rely on Willson I's "substantial portion of the workday" test, it complied with section 105(a) by installing a cable running the length of the roof beam. According to American Bridge, the cable provided fall protection because, used as a handrail, it protected workers crossing the beam. American Bridge claims that the cable is thus a "safety line" within the meaning of section 105(a). The Secretary disagrees, arguing that the cable can be considered a "safety line" only if workers tie-off to it. The Secretary's definition of "safety line" is, of course, entitled to deference if reasonable. The dispute over whether the cable is a "safety line," however, misses the point. As we said in Willson III, to comply with section 105(a), a safety device must be effective--it must actually protect workers from falls. Willson III, 773 F.2d at 1384. According to OSHA's own instructions, "the requirements of [section 105(a) ] are met only if use of one of the listed devices provides adequate fall protection to employees." OSHA Instruction STD 3-3.1 (July 18, 1983), reprinted in [1982-1983 Developments Transfer Binder] Empl.Safety & Health Guide (CCH) p 12,855, at 17,165.
 
 
 16
 The key, then, is whether the cable actually protected workers from falls. The Commission concluded that it did not, finding that the cable "provided protection only if the untied-off employee was able to grab onto it." American Bridge/Lashcon, 16 O.S.H.Cas. (BNA) at 1869. Put another way, unlike safety nets or tie-offs, the cable could not protect a worker who tripped or was hit by a falling object and was unable to grab the cable. The Commission's conclusion is supported by the OSHA compliance officer's testimony:
 
 
 17
 Q What hazard was presented by this employee walking the steel without being tied off or without safety nets in use?
 
 
 18
 A He could slip on the steel beam that he was walking on and fall in one of two directions. Either to the south or to the north of the beam.
 
 
 19
 Q That would be interior or exterior fall?
 
 
 20
 A Well, it was a 28 foot fall. He could fall to the exterior of the structure. If he did that, he would have to fall under the handrail that was put up there for a hand hold. If he fell to the north, he would fall through what was the interior of the structure and he would fall a distance of 28 feet to the ground below.
 
 
 21
 Appendix at 105-06. The Commission's finding that the cable was not an acceptable safety device because it failed to provide adequate fall protection is thus supported by substantial evidence.
 
 CYLINDERS
 
 22
 Section 1926.350(j) adopts standards developed by the American National Standards Institute for the storage of oxygen cylinders. To minimize the risk of fire or explosion, the standards require:
 
 
 23
 Oxygen cylinders in storage shall be separated from fuel-gas cylinders or combustible materials (especially oil or grease), a minimum distance of 20 feet or by a noncombustible barrier at least 5 feet high having a fire-resistance rating of at least 1/2 hour.
 
 
 24
 ANSI Z49.1-1967, Safety in Welding and Cutting, p 3.2.4.3, incorporated by 29 C.F.R. Sec. 1926.350(j) (1994).
 
 
 25
 American Bridge does not claim that it separated the cylinders as required by the regulation. Instead, relying on MCC of Florida, Inc., OSHRC Docket No. 15757, 9 O.S.H.Cas. (BNA) 1895 (Rev.Comm'n May 28, 1981), it argues that because the cylinders were not in a designated storage area and were available for immediate use, they were not "in storage." The Commission disagreed, ruling that the critical factor in determining whether a cylinder is "in storage" is the amount of time the cylinders were unused, not whether they were available for use. American Bridge/Lashcon, 16 O.S.H.Cas. (BNA) at 1869. Finding that workers had not used the cylinders during the previous day and that they "might not have been used for another day or two," the Commission ruled that the cylinders were "in storage." Id. at 1869-70.
 
 
 26
 Read alone, MCC of Florida appears to support American Bridge. In that case, the company kept its oxygen cylinders in a separate storage area, moving them to the construction site--a barge--when needed for a day's work. MCC of Florida, 9 O.S.H.Cas. (BNA) at 1896-97. The Secretary cited the company for improperly storing the cylinders on the barge. The Commission vacated the citation, finding that, because the cylinders on the barge "were available for immediate use in the area where they were located," they were not "in storage" within the meaning of the ANSI standard. Id.; see also Grossman Steel & Aluminum Corp., OSHRC Docket No. 76-2834, 6 O.S.H.Cas. (BNA) 2020, 2023-24 (Rev.Comm'n Oct. 18, 1978) (interpreting analogous provision of 29 C.F.R. Sec. 1910.252(a)(2)(iv) and holding that cylinders placed in an area for intermittent use are not "in storage").
 
 
 27
 Recent Commission decisions, however, depart from MCC, focusing not on whether the cylinders are located in an area available for immediate use, but rather on the length of time they remain unused. For example, in Hackney/Brighton Corp., the Commission concluded that oxygen and fuel-gas cylinders held together overnight before workers moved them to a designated storage area the following morning were "in storage." OSHRC Docket No. 88-610, 15 O.S.H.Cas. (BNA) 1884, 1888 (Rev.Comm'n Aug. 28, 1992) (interpreting 29 C.F.R. Sec. 1910.252(a)(2)(iv)). In Newport News Shipbuilding & Dry Dock Co., the Commission ruled that cylinders were "in storage" when they were left at a worksite overnight after not being used during the day. OSHRC Docket No. 90-2658, 16 O.S.H.Cas. (BNA) 1676, 1679-80 (Rev.Comm'n Mar. 24, 1994) (interpreting 29 C.F.R. Sec. 1910.253(b)(4)(iii)).
 
 
 28
 Relying on these decisions, the Commission focused on the amount of time American Bridge kept the oxygen and gas cylinders together without using them. In view of the project superintendent's testimony that he was "quite sure the cylinders had been used the day before," Appendix at 144, we doubt whether the Commission's finding that American Bridge did not know when the cylinders had last been used is supported by substantial evidence. But the project superintendent also testified that the cylinders had been left out overnight, that he was "uncertain" whether the cylinders had been used the day of the inspection, and that he did not know when the cylinders would next be used. Id. at 141, 144. Together with the fact that hoses were not attached to the cylinders and that the cylinders were capped, this testimony provides adequate support for the Commission's finding that the cylinders were "in storage." According to the Secretary, the cylinder storage in this case posed "[the hazard of] fire and explosion, including the hazard of an ignited cylinder becoming a dangerous projectile." Brief of the Secretary of Labor at 35, 38. We defer to the Secretary's judgment, sustained by the Commission, that the length of time American Bridge left the cylinders unused created the very hazard the regulations were designed to prevent. Cf. Whirlpool Corp. v. Marshall, 445 U.S. 1, 13, 100 S.Ct. 883, 891, 63 L.Ed.2d 154 (1980) (noting that the OSH Act's purpose is to prevent occupational deaths and injuries); Willson I, 685 F.2d at 674 (noting OSH Act's "purpose of 'assur[ing] so far as possible ... safe ... working conditions....' ") (quoting 29 U.S.C. Sec. 651(b)).
 
 
 29
 We deny the petition for review.
 
 
 30
 So ordered.