828 F.2d 373
 56 USLW 2176, 13 O.S.H. Cas.(BNA) 1377,
1987 O.S.H.D. (CCH) P 28,033
 William E. BROCK, Secretary of Labor, Petitioner,
v.
CARDINAL INDUSTRIES, INC., and Occupational Safety and
Health Review Commission, Respondents.
Local Union No. 2077, United Brotherhood of Carpenters and
Joiners of America, AFL-CIO, Intervenor.
 No. 86-3094.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 27, 1987.
Decided Sept. 4, 1987.
 
 George R. Salem, Deputy Sol. of Labor, Frank A. White, Associate Sol., for OSH.
 Joseph M. Woodward, for Appellate Litigation.
 Morris R. Parker, Jr. (argued), Washington, D.C., Atty. for U.S. Dept. of Labor.
 K. Krieger, for intervenor Local Union No. 2077.
 Robert D. Weisman (argued), Schottenstein, Zox & Dunn, P.A., Columbus, Ohio, Ray H. Darling, Jr., Executive Secretary, OSHRC, Washington, D.C., for respondent.
 Before KEITH and KENNEDY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 The Secretary of Labor ("Secretary") petitions this court to review a decision of the Occupational Safety and Health Review Commission ("Review Commission" or "Commission") vacating the Secretary's citations that were brought against Cardinal Industries, Inc. ("Cardinal") for violations of the Occupational Safety and Health Act of 1970 ("OSH Act" or "Act"), 29 U.S.C. Secs. 651-678 (1982). The Secretary asserts on appeal, and we agree, that the Review Commission erred in concluding that Cardinal was engaged in "construction work" as that term is used in 29 C.F.R. Sec. 1910.12 (1986).[1] Accordingly, we reverse the Commission's decision and remand so that the Commission may consider Cardinal's alternative objections to the ALJ's decision.
 
 
 2
 Cardinal produces modular housing units at its factory in Columbus, Ohio. The housing units are mass-produced on an assembly line that is comprised of twenty five work stations. The operation begins with the placing of the floor, and the units are then mechanically propelled through the remaining work stations, where the walls, ceiling, roof, gypsum, roofing felt, shingles, and other necessary items are added. The completed units come off of the assembly line as essentially finished houses, needing only to be transported to their destinations, affixed to prepared foundations, and hooked up to the utilities. It is undisputed, however, that Cardinal's employees do not transport or install the finished units.
 
 
 3
 In March, 1982, the Occupational Safety and Health Administration ("OSHA") conducted an inspection of Cardinal's factory in response to an employee complaint and the report of a fatal accident. The OSHA compliance officer observed Cardinal employees working on three elevated platforms without guardrail protection. In addition, the officer witnessed workers on modular unit roofs, which are eight to twelve feet high, again without any safety devices to protect them from falling.[2] Based on these observations, the Secretary cited Cardinal for three separate violations of the OSHA general industry guardrail regulation, see 29 C.F.R. Sec. 1910.23(c)(1) (1986), and one violation of the general industry personal protective equipment standard, see 29 C.F.R. Sec. 1910.132(a) (1986), for not requiring employees working atop the unit roofs to wear safety belts and lanyards.
 
 
 4
 Cardinal contested the citations and the case eventually came before a Review Commission administrative law judge ("ALJ"). Cardinal contended that the Secretary cited it under the wrong standards, arguing that its operation constituted "construction work" under 29 C.F.R. Sec. 1910.12, and was thus controlled by the construction industry standards in 29 C.F.R. Part 1926. See 29 C.F.R. Sec. 1910.12(a) (1986). The ALJ concluded, however, "that the nature of Cardinal's operation is more akin to manufacturing than construction," and that the Secretary was therefore correct in citing Cardinal under the general industry standards of Part 1910. The ALJ then affirmed three of the four citations and assessed penalties.
 
 
 5
 On appeal, a majority of the three-member Review Commission held that in applying section 1910.12, "it is the nature of the work rather than its location that controls." Based on its factual findings that the tasks performed by Cardinal employees were characteristic of construction work and that Cardinal's "primary function" was construction, the Commission majority held that the nature of Cardinal's work was "construction," and not manufacturing, for purposes of section 1910.12. Consequently, the majority found that the Secretary's citations were preempted by specifically applicable construction industry standards in Part 1926,[3] and vacated the citations. In dissent, Commissioner Rader, insisted that the term "construction work necessarily implies some direct and tangible connection or relationship with the physical site or location of the structure." Because all of Cardinal's operations occur off-site, Commissioner Rader would have affirmed the ALJ's conclusion that Cardinal was not engaged in "construction work" under section 1910.12. The Secretary's timely petition to review the Commission's order ensued. See 29 U.S.C. Sec. 660(b) (1982).
 
 
 6
 The Secretary contends on appeal that the Review Commission erred in its legal conclusion that, in applying section 1910.12, "it is the nature of the work rather than its location that controls." According to the Secretary, for an employer to be engaged in "construction work" under section 1910.12, the employer's operation must have some connection to the construction site. The issue for our review, therefore, is whether the Commission correctly interpreted the regulation. If the Commission's interpretation is erroneous, its application of the incorrect standard to the facts of this case must be reversed as "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law."[4] 5 U.S.C. Sec. 706(2)(A) (1982); see Brock v. L.R. Willson & Sons, Inc., 773 F.2d 1377, 1382-83 (D.C.Cir.1985); Donovan v. A. Amorello & Sons, Inc., 761 F.2d 61, 62-66 (1st Cir.1985); Usery v. Hermitage Concrete Pipe Co., 584 F.2d 127, 131-34 (6th Cir.1978). See also Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974) (agency action is "arbitrary and capricious" if not based on consideration of the relevant factors). For the reasons that follow, we agree with the Secretary that the Commission erred in interpreting the regulation.
 
 
 7
 The Occupational Safety and Health Act of 1970, 29 U.S.C. Secs. 651-678 (1982), was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. Sec. 651(b) (1982); see Whirlpool Corp. v. Marshall, 445 U.S. 1, 11-13, 100 S.Ct. 883, 890-91, 63 L.Ed.2d 154 (1980). The Act authorizes the Secretary of Labor to establish occupational safety and health standards, see 29 U.S.C. Sec. 655 (1982); 29 C.F.R. Sec. 1910.1 (1986), which are binding upon employers engaged in businesses affecting commerce, see 29 U.S.C. Secs. 652(5), 654(a)(2) (1982). The Secretary has accordingly promulgated the Occupational Safety and Health Standards, otherwise known as the general industry standards. See 29 C.F.R. Part 1910. The Secretary has also adopted several industry-specific "established Federal standards," see 29 C.F.R. Secs. 1910.12-.16, which were previously established by federal statute or regulation, 29 U.S.C. Sec. 652(10), including the construction industry standards of 29 C.F.R. Part 1926,[5] see 29 C.F.R. Sec. 1910.12. Under this regulatory scheme, the general industry standards apply to a given working condition unless preempted by corresponding industry-specific standards. See B & B Insulation, Inc. v. OSHRC, 583 F.2d 1364, 1369 n. 9 (5th Cir.1978); 29 C.F.R. Sec. 1910.5(c) (1986); see also Brock v. L.R. Willson & Sons, Inc., 773 F.2d 1377, 1380-81 (D.C.Cir.1985). Thus, in the instant case, the general industry standards regulate Cardinal's operation unless Cardinal is engaged in "construction work" as that term is used in section 1910.12, in which case the specifically applicable construction industry standards of Part 1926 would control. We therefore turn to the meaning of the term "construction work."
 
 
 8
 Whether the term "construction work" in 29 C.F.R. Sec. 1910.12 requires that the work be connected with the construction site is a question of first impression for the courts, as it was for the Review Commission.[6] Our analysis therefore begins with the language of section 1910.12, which provides in relevant part:
 
 Sec. 1910.12 CONSTRUCTION WORK
 
 9
 (a) Standards. The Standards prescribed in Part 1926 of this chapter are adopted as occupational safety and health standards under section 6 of the Act and shall apply, according to the provisions thereof, to every employment and place of employment of every employee engaged in construction work....
 
 
 10
 (b) Definition. For purposes of this section, "construction work" means work for construction, alteration, and/or repair, including painting and decorating. See discussion of these terms in Sec. 1926.13 of this title.
 
 
 11
 29 C.F.R. Sec. 1910.12 (1986) (emphasis added). As this regulation states, an employer must comply with the safety and health regulations in Part 1926 if its employees are "engaged in construction work." To determine if such work, defined as "work for construction, alteration, and/or repair, including painting and decorating," is being performed, one must consult section 1926.13 for a "discussion of these terms." 29 C.F.R. Sec. 1910.12(b) (1986). Section 1926.13 states:
 
 
 12
 The terms "construction," "alteration," and "repair" used in section 107 of the [Construction Safety] Act are also used in section 1 of the Davis-Bacon Act (40 U.S.C. 276a), providing minimum wage protection on Federal construction contracts, and section 1 of the Miller Act (40 U.S.C. 270a), providing performance and payment bond protection on Federal construction contracts.... The use of the same or identical terms in these statutes which apply concurrently with section 107 of the [Construction Safety] Act have considerable precedential value in ascertaining the coverage of section 107.
 
 
 13
 29 C.F.R. Sec. 1926.13(a) (1986) (emphasis added). Thus, this regulation requires that the terms "construction, alteration, and repair" in the Construction Safety Act be interpreted consistently with those same terms as used in the Davis-Bacon Act and the Miller Act. Similarly, we conclude that the explicit reference to section 1926.13 in section 1910.12(b) mandates that the interpretation of the terms "construction, alteration, and repair" in the Construction Safety Act, Davis-Bacon Act, and Miller Act should "have considerable precedential value" in defining the term "construction work" in section 1910.12.[7] In interpreting section 1910.12 to require inquiry only into the nature of the work and not its location, however, the Review Commission totally ignored section 1926.13 and the precedent made relevant by that section. We therefore turn to that precedent to determine whether it supports the Commission's interpretation of "construction work."
 
 
 14
 Under the Secretary's regulations implementing the Davis-Bacon Act:
 
 
 15
 The terms "construction" ... or "repair" mean all types of work done on a particular building or work at the site thereof ..., all work done in the construction or development of the project, including without limitation, altering, remodeling, installation (where appropriate) on the site of the work of items fabricated off-site, painting and decorating, the transporting of materials and supplies to or from the building or work ..., and the manufacturing or furnishing of materials, articles, supplies or equipment on the site of the building or work....
 
 
 16
 29 C.F.R. Sec. 5.2(j) (1986) (emphasis added). "The 'site of the work' is limited to the physical place or places where the construction called for in the contract will remain when work on it has been completed...." Id. Sec. 5.2(l)(1). Most importantly, the regulations contain a provision specifically applicable to off-site fabrication facilities:
 
 
 17
 (2) Except as provided in paragraph (l)(3) of this section, fabrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards, etc., are part of the "site of the work" provided they are dedicated exclusively, or nearly so, to performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them.
 
 
 18
 Id. Sec. 5.2(l)(2) (1986) (emphasis added). The unmistakable import of these provisions is that an operation will be considered "construction" under the Davis-Bacon Act only if the work is performed on, or in close proximity to, the construction site. If not, only the delivery and installation of items fabricated offsite, not the fabrication process itself, may be considered "construction" under the Davis-Bacon Act. Id. Sec. 5.2(j).
 
 
 19
 This interpretation of "construction" under the Davis-Bacon Act finds further support in a decision of the Wage Appeals Board ("Board"), which hears appeals in cases brought under the Davis-Bacon Act, see 29 C.F.R. Sec. 7.1(b)(1) (1986). In finding that the erection of an experimental nuclear reactor was "construction" under Davis-Bacon, even though the reactor was to be initially erected in an assembly building 1 1/2 miles from its permanent site, the Board held that "the construction site is sufficiently identifiable. It includes the containment building, the assembly building, and the intervening railroad track." In re Atomic Energy Commission, 19 WH Cases 489, 493 (Wage Appeals Board 1967). The Board properly concluded that a finding of "construction" under the Davis-Bacon Act requires that the fabrication facility have some connection to the ultimate construction site. Thus, the interpretation given to "construction" under the Davis-Bacon Act directly supports the Secretary's position that a finding of "construction work" under section 1910.12 requires a nexus to the construction site.
 
 
 20
 Additional evidence concerning the intended scope of section 1910.12 is contained in the definition of "subcontractor" in section 1926.13(c).[8] The Secretary defines a subcontractor as a person who furnishes supplies and materials, "if the work in question involves the performance of construction work and is to be performed: (1) Directly on or near the construction site, or (2) by the employer for the specific project on a customized basis." 29 C.F.R. Sec. 1926.13(c) (1986) (emphasis added). The Secretary's regulation, therefore, specifically contemplates that in order for a person to be deemed a "subcontractor," the work must be performed on or near the construction site, or on a customized basis for the site. Thus, section 1926.13(c) gives a specific example of the Secretary's interpretation of "construction, alteration, and/or repair" under the Construction Safety Act as requiring a nexus to the construction site.
 
 
 21
 Finally, as Commissioner Rader argued in dissent, an examination of the construction standards of Part 1926 as a whole further supports the Secretary's argument that those regulations were promulgated with the understanding that "construction work" requires some connection to a particular construction site. Commissioner Rader cited several construction standards that concern site preparation as examples. See, e.g., 29 C.F.R. Sec. 1926.604 ("Site clearing"); id. Secs. 1926.601-.603 (imposing requirements for vehicles and equipment used in site preparation and otherwise used on the site); id. Sec. 1926.602(a)(3) (controlling access roads to the site). Commissioner Rader also observed that the regulations controlling the erection of structures presume the existence of a specific construction site. See, e.g., 29 C.F.R. Secs. 1926.700-.702 ("Concrete, Concrete Forms, and Shoring"); id. Secs. 1926.750-.752 ("Steel Erection"); id. Secs. 1926.800-.804 ("Tunnels and Shafts, Caissons, Cofferdams, and Compressed Air.").
 
 
 22
 All of the foregoing provisions clearly support the Secretary's assertion that the terms "construction, alteration, and/or repair" in the Construction Safety and Davis-Bacon Acts have been consistently interpreted to require a nexus between the work and the construction site.[9] In addition, the Secretary argues that OSHA has relied on the on-site nexus requirement in formulating enforcement practices, see, e.g., Fleetwood Homes of Texas, Inc., 1980 OSH Dec. (CCH) p 24,837 (OSHRC 1980) (applying general industry standards to manufacturer of mobile homes without discussion of Part 1926); Prowler Travel Trailers of N.Y., Inc., 1977-78 OSH Dec. (CCH) p 22,397 (OSHRC 1977) (same; manufacturer of travel trailers); cf. Dravo Corp., 1982 OSH Dec. (CCH) p 26,076, at 32,814 (OSHRC 1982) (pipe fabrication not "shipbuilding" or "related employment" under Part 1916 because, inter alia, the shop was physically separate from ship assembly operation), and that it has been crucial to the Secretary's promulgation of occupational safety and health standards that are specifically designed to protect employees who work in an enclosed factory setting, see e.g., 29 C.F.R. Sec. 1910.1025(a)(2) (1986) (construction industry exempt from lead standard); compare 29 C.F.R. Sec. 1910.95(c)-(p) (detailed general industry hearing conservation standard) with 29 C.F.R. Sec. 1926.52(d)(1) (requiring only that "a continuing, effective hearing conservation program shall be administered" in construction industry). We therefore agree with Commissioner Rader's conclusion in dissent that "construction work necessarily implies some direct and tangible connection or relationship with the physical site or location of the structure."[10]
 
 
 23
 The Review Commission, however, without mentioning section 1926.13 or giving a reason for its departure from the settled interpretations of "construction, alteration, and/or repair" under the Construction Safety and Davis-Bacon Acts, interpreted section 1910.12 to permit a finding of "construction work" based solely on the nature of the work. The Commission thereby effectively rewrote section 1910.12(b) deleting the Secretary's reference to section 1926.13. The Commission, however, does not possess the policy-making authority necessary to promulgate or amend substantive rules.
 
 
 24
 "[T]he Act imposes policy-making responsibility upon the Secretary, not the Commission. Whatever 'policies' the Commission establishes are indirect. Only those established by the Secretary are entitled to enforcement and defense in court."
 
 
 25
 Marshall v. OSHRC, 635 F.2d 544, 547 (6th Cir.1980) (quoting Dale M. Madden Constr. Inc. v. Hodgson, 502 F.2d 278, 280 (9th Cir.1974)). Therefore, we conclude that the Review Commission acted arbitrarily and abused its discretion in interpreting the term "construction work" under section 1910.12 as requiring inquiry into the nature of the work, but not its location. The reference to section 1926.13 and the prior consistent interpretations of "construction, alteration, and/or repair" under the Construction Safety and Davis-Bacon Acts make clear that a finding of "construction work" under section 1910.12 requires some nexus to the construction site.
 
 
 26
 Applying the proper interpretation of section 1910.12 to the instant case leads inexorably to the conclusion that Cardinal's employees are not engaged in "construction work."[11] Cardinal concedes that its operation occurs wholly within its plant, with no connection to any construction site. As the ALJ observed, Cardinal's mass-production operation is "more akin to manufacturing than construction." Therefore, Cardinal's operation is governed by the general industry standards of Part 1910, and not by the construction industry standards.
 
 
 27
 Accordingly, the decision of the Review Commission is REVERSED, and this case is REMANDED to the Commission for further proceedings.
 
 
 
 [1]
 The Secretary argues, as an alternative ground for reversal, that the Review Commission's decision is inconsistent with the Commission's own precedent. No prior Commission decision, however, has directly confronted the issue presented here. See infra note 6 and accompanying text. Moreover, because we conclude that the Commission's decision is inconsistent with the regulation, we need not decide whether Commission precedent implicitly precludes the result that the Commission reached
 The Secretary also challenges the Review Commission's refusal to permit the Secretary to amend his complaint under Fed.R.Civ.P. 15(b) to allege violations of the construction industry standards in 29 C.F.R. Part 1926 (1986). In view of our reversal of the Commission's interpretation of "construction work" in 29 C.F.R. Sec. 1910.12(b), however, we need not address the Rule 15(b) issue.
 
 
 [2]
 The reported fatal accident resulted when an employee fell from a modular unit roof
 
 
 [3]
 The Commission determined that the guardrail regulation cited by the Secretary was preempted by the parallel construction industry standard of 29 C.F.R. Sec. 1926.500(d)(1) (1986) ("Guarding of ... platforms"), and that the Secretary's general industry personal protective equipment citation was preempted by 29 C.F.R. Sec. 1926.28(a) (1986) ("Personal protective equipment"). The Secretary concedes that if Cardinal is engaged in "construction work" under section 1910.12, the Commission correctly decided that the Secretary's citations were preempted
 
 
 [4]
 We note that in cases in which the Secretary and the Review Commission disagree over the proper interpretation of an OSHA regulation, this circuit apparently favors the interpretation of the Commission, but only if reasonable. See Donovan v. United Transp. Union, 748 F.2d 340, 346 (6th Cir.1984), rev'd on other grounds, 474 U.S. 3, 106 S.Ct. 286, 88 L.Ed.2d 2 (1985) (per curiam); Usery v. Hermitage Concrete Pipe Co., 584 F.2d 127, 132 (6th Cir.1978); Dunlop v. Rockwell Int'l, 540 F.2d 1283, 1288-90 (6th Cir.1976). In the instant case, however, we need not defer to the Commission's interpretation because, as discussed below, it is inconsistent with the language of the regulation. See Brock v. L.R. Willson & Sons, Inc., 773 F.2d 1377, 1382-83 (D.C.Cir.1985)
 
 
 [5]
 The construction industry standards in 29 C.F.R. Part 1926 (1986) were promulgated pursuant to section 107 of the Contract Work Hours and Safety Standards Act, 40 U.S.C. Sec. 333 (1982), also known as the Construction Safety Act. See 29 C.F.R. Sec. 1926.1 (1986)
 
 
 [6]
 Although the instant case provided the Review Commission with its first opportunity to address the issue, the Commission has applied its interpretation to at least one subsequent case, Nu-Way Mobile Home Mfg., 1986 OSHD Dec. (CCH) p 27,489. The Nu-Way case, however, is not now before this court
 
 
 [7]
 Section 1910.12(c) provides that the regulations in Subpart B of Part 1926, which include section 1926.13, are not incorporated as construction safety and health standards under section 1910.12(a). 29 C.F.R. Sec. 1910.12(c) (1986). Subpart B is excluded because its provisions are mainly relevant to determining the scope of section 107 of the Construction Safety Act, 40 U.S.C. Sec. 333 (1982), which applies only to employers who are engaged in construction under contract with the U.S. government. The OSH Act, on the other hand, was enacted under the Commerce Clause, and the jurisdictional restrictions of the Construction Safety Act are irrelevant to determining which employers are covered by the OSH Act. See 29 U.S.C. Secs. 652(5), 654(a)(2) (1982) (all employers engaged in business affecting interstate commerce are bound to follow occupational safety and health standards); 29 C.F.R. Sec. 1910.12(c)
 The limitation thus placed by the Secretary on the incorporation of Subpart B of Part 1926 does not detract, however, from our conclusion that section 1910.12(b) must be interpreted in accordance with section 1926.13. Section 1910.12(b) explicitly refers to the discussion of "construction, alteration, and/or repair" in section 1926.13. It is inconceivable that in the very next subsection the Secretary would announce a rule that renders section 1926.13 irrelevant to the analysis. Rather, the only reasonable conclusion is that the Secretary intended that "construction work" under section 1910.12(b) be defined consistently with section 1926.13.
 
 
 [8]
 Although we recognize that the term "subcontractor" has no direct application under the OSH Act, 29 C.F.R. Sec. 1910.12(c); see supra note 7, we believe that this definition is a relevant datum elucidating the Secretary's interpretation of the terms "construction, alteration, and/or repair" under section 107 of the Construction Safety Act
 
 
 [9]
 Although we need not rely on it to resolve this case, we note that the Secretary's position is also supported by the Standard Industrial Classification Manual, which is a publication of the Office of Management and Budget. The Manual classifies prefabrication of wood buildings as "manufacturing," and specifically distinguishes "Establishments primarily engaged in fabricating buildings on the site of construction," which are classified as Division C, Construction. See Office of Management and Budget, Standard Industrial Classification Manual 94 (1972)
 
 
 [10]
 We disagree with the Commission majority's argument that the reference to "alteration and/or repair" in section 1910.12(b) supports its conclusion that "the nature of the work rather than its location ... controls." Requiring an on-site nexus does not, as the Commission implies, mean that construction work may never be performed within a pre-existing structure. Indeed, the very nature of construction requires much indoor work. The reference to "alteration and/or repair" means only that "construction work" can occur in a building even if it is not newly constructed. In such cases, the construction site is located within the building, and the on-site nexus is satisfied
 
 
 [11]
 This conclusion does not mean, of course, that the Commission's factual findings concerning the construction nature of the tasks performed by Cardinal's employees and Cardinal's "primary function" are irrelevant to the "construction work" inquiry under section 1910.12. Rather, those considerations are relevant only after finding that the employer's operation has the requisite nexus to the construction site