**NATIONAL ENGINEERING & CONTRACTING COMPANY, Petitioner,**

v.

**The UNITED STATES of America, OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Secretary of Labor, Respondents.**

No. 86–3933.

United States Court of Appeals, Sixth Circuit.

Dec. 1, 1987.

M. Robert Flanagan, Blaszak, Shilling, Coey & Bennett Co., LPA, Elyria, Ohio, for petitioner.

Ray Darling, Secretary, OSHRC, Barbara Werthman, Office of the Sol. U.S. Dept. of Labor, Washington, D.C., for respondents.

Before KRUPANSKY and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.

PER CURIAM.

National Engineering and Contracting Company (National) petitions this court for review of the decision of the Occupational Safety and Health Review Commission (the Commission) finding it in violation of the standard at 29 C.F.R. § 1926.500(b)(7). National argues alternatively, that section 1926.500(b)(7) does not apply to the work it was performing and that the Administrative Law Judge (ALJ) erred in finding that National failed to establish the defenses of impossibility or employee misconduct. For the reasons that follow, we affirm the decision of the Commission.

I.

On September 9, 1985, National employee Eustace Hayes was killed when he fell through an unguarded floor opening in a pump house at the Mentor Waste Treatment Facility in Mentor, Ohio. At the time of the accident, National was a general contractor for a project to upgrade and expand the waste treatment plant. The project required that National build seven new buildings, rehabilitate seven existing buildings and install underground pipes and wells. The pump house is a three level subterranean building. The floor openings were covered by easily removable grating so that workers could have access to the pipes and valves located in the building. On the day of the accident Hayes and another worker were finishing the installation of a check valve and cleaning up the work site.

On June 7, 1985, a safety meeting was held and the workers were read the following instruction: "[a]lways protect floor, roof, and wall openings with adequate covers or guard rails." National, however, did not require the use of guard rails in the pump house. One worker testified that the workers would cover the opening with pieces of plywood, but the plywood was not strong enough to support a man.

National was served with a citation dated September 25, 1985 charging a violation of section 1926.500(b)(7)[1] and on October 3, 1985, it contested the citation. The Secretary of Labor filed a complaint with the Commission and a hearing was held before an ALJ.[2]

At the hearing, an OSHA compliance officer who investigated the accident described four types of guard rails suitable for the pump house. The rails would not interfere with the majority of the hoisting work that was done at the site, and the rails could be made to accomodate the hoisting of large objects. There was also testimony that the foreman visited the pump house several times each day, and that the superintendent came by during the course of the work. Finally, there was testimony that the only safety instructions National gave its employees at the beginning of their assignment was to replace the gratings when they finished their work and to "take care of your floor openings."

1. Section 1926–500(b)(7) provides that temporary floor openings shall have standard rails, and is made applicable to every employment or place of employment of every employee engaged in construction work by section 1910.-12(a).

2. Prior to the hearing, the Secretary filed an amended complaint adding an alternative violation of 29 C.F.R. § 1910.23(a)(7) which has a general application.

The ALJ affirmed the citation alleging serious violation of section 1926.500(b)(7) and assessed a four hundred dollar penalty. He ruled that the work being done was subject to construction safety standards because it was necessary and integral to National's construction work at the site. He also found that National did not make a sufficient evidentiary showing with respect to its affirmative defenses of impossibility and employee misconduct. National petitioned for review by the full Commission. No member directed review, and the ALJ's order became the final order of the Commission on September 24, 1986. National petitions the court for review of this order.

National argues that section 1926.-500(b)(7) did not apply to the work being performed on September 9, 1985, that it was infeasible to comply with the regulation, and that employee misconduct caused the accident. The Secretary argues that the pump house operation does fall under the construction standards of Part 1926 of the regulations, that compliance with the standard was not impossible nor did it prevent necessary work, and that the violation was not the result of employee misconduct.

## II.

The standards for reviewing decisions of the Commission were summarized by this court in *Empire–Detroit Steel v. Occupational Safety and Health Review Commission,* 579 F.2d 378 (6th Cir.1978).

> 29 U.S.C. § 660(a) requires that 'findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.' Substantial evidence was defined by this court ... as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Moreover, adjudicatory conclusions of the Commission can be set aside only when they are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'

579 F.2d at 383 (citations omitted).

National argues that section 1926.-500(b)(7) was not applicable to it because the work it was performing at the pump house was merely maintenance and not construction work. Without discussing relevant legal interpretations of the regulation, it relies principally on the testimony of witnesses who opined that the replacement of the check valves was not construction work.

### A.

■ Section 1926.500(b)(7) provides that "temporary floor openings shall have standard railings" and is made applicable to "every employment and place of employment of every employee engaged in construction work" by section 1910.12(a). Section 1910.12(b) provides that " 'construction work' means work for construction, alteration, and/or repair, including painting and decorating. See discussion of these terms in § 1926.13 of this title." This court has recently held in *Brock v. Cardinal Industries, Inc.,* 828 F.2d 373 (6th Cir.1987) that "the explicit reference to section 1926.13 in section 1926.12(b) mandates that the interpretation of the terms 'construction, alteration, and repair' in the Construction Safety Act, Davis–Bacon Act, and Miller Act should 'have considerable precedential value' in defining the term 'construction work' in section 1910.12." *Brock,* 828 F.2d at 377. The court then went on to look at the Secretary's regulations implementing the Davis–Bacon Act to determine if they supported the Commission's interpretation of the term "construction work."

In the instant case, the Secretary points to the same Davis–Bacon regulations to support the argument that the pump house project was covered under section 1926.-500(b)(7). Specifically, the Secretary points to 29 C.F.R. §§ 5.2(i), (j), (1) which provide in pertinent part,

> The terms 'building' and 'work' generally include ... without limitation, buildings, structures, and improvements of all types, such as ... plants, ... sewers, ... pumping stations, ... rehabilitation and reactivation of plants.... 29 C.F.R. § 5.2(i).
>
> The terms 'construction' ... or 'repair' mean all types of work done on a particu-

lar building or work at the site thereof ... including without limitation, altering, remodeling, installation (where appropriate) on the site of the work or items fabricated off-site, painting and decorating, the transporting of materials and supplies to or from the building or work by the employees of the construction contractor. 29 C.F.R. § 5.2(j).

[S]ite of work is limited to the physical place or places where the construction called for in the contract will remain when work on it has been completed.... 29 C.F.R. § 5.2(1).

The Secretary then accurately indicates how the pump house project fits under the definition of construction in section 5.2:

The valves, which are manufactured off site, are installed on site (see Section 5.2(j) & (l)(1)),

by employees of the construction contractor (see Section 5.2(j)),

in order to rehabilitate the pump house (see Section 5.2(i)), and

will remain on the site when the project is complete (see Section 5.2(1)(i)).

The Secretary also argues that the pump house project was covered under Part 1926 because it was integral and necessary part of construction work. This was the basis for the ALJ's finding of coverage.

The Commission has held that "Part 26 applies ... to employees who are actually engaged in construction work or who are engaged in operations that are an integral and necessary part of construction work." *Snyder Well Servicing, Inc.,* 10 O.S.H.Cas. (BNA) 1371 (1982); *see also Bechtel Power Corp. v. Secretary of Labor,* 548 F.2d 248 (8th Cir.1977) (per curiam).

In this case, the ALJ found that National, as general contractor at the plant, was there for the purpose of increasing its overall capacity. The ALJ concluded that "[r]eplacement of the check valves in this case cannot be isolated and seen as accomplishing a non-construction purpose when respondent's primary purpose at the work site was to perform construction work." The ALJ's findings are supported by the following evidence. Job superintendent Horvath testified that the project required

National to build seven new buildings and rehabilitate seven existing buildings. Structural engineer Timmer testified that National was also building new filtration and aeration equipment, and that the work would result in an increase in the capacity of the plant. Both witnesses testified that the rehabilitated pump house would serve as a back-up to a new pump house that National was constructing.

We find that the ALJ's findings are supported by substantial evidence and that the conclusion that section 1926.500(b)(7) is applicable to National's pump house activity is not arbitrary, capricious, an abuse of discretion, or contrary to law.

### B.

■ National argues that even if section 1926.500(b)(7) governs its pump house activity, it was infeasible to comply with this standard.

The ALJ found that National could have installed standard railings to protect the temporary floor openings and concluded that National had not shown the impossibility of meeting the requirements of the standard. National correctly points out that the impossibility defense was changed to an infeasibility defense by the Commission in *Dun–Par Engineering Form Co.,* 12 O.S.H.Cas. (BNA) 1949 (1986). Infeasibility requires that compliance is not practical or reasonable under the circumstances. *Id.* This case, however, is currently on appeal before the Eighth Circuit. The application of either an impossibility or infeasibility test does not affect the ALJ's determination, since the ALJ expressly found that National could have installed standard railings, and this finding supports a conclusion that National failed to establish its affirmative defense.

In essence, National argues that the ALJ's finding that it could have installed standard railings is not supported by substantial evidence. The main basis for their argument is the testimony from their expert that a forty-two inch high rail would have impeded the hoisting of the check valves because of the seven foot ceilings.

We are not persuaded by this argument. The evidence showed that there were four viable methods of providing a guard rail, and that each method was capable of accommodating the hoisting or large objects. Also, the ALJ's finding is supported by the fact that National presented little evidence to excuse the guarding of the floor opening when large objects weren't being hoisted. Since the evidence showed that feasible standard railings were available and would not have impeded the majority of National's work in the pump house, and could have been made to accommodate the hoisting of the check valves, we find that the ALJ's findings are supported by substantial evidence.

## C.

 National's final argument deals with the ALJ's conclusion that it did not establish the defense of employee misconduct. National asserts that employee misconduct must have caused the accident since "Hayes was an experienced journeyman plumber and National had implemented a specific work rule concerning the temporary floor opening."

The Secretary counters this argument by pointing to the facts that National did not provide guard rails and the only "work rule" was to instruct employees to replace gratings when work was finished, and to "watch your floor openings."

The ALJ concluded that National had not met its burden of proving that the actions constituting noncompliance were unknown to the employer and contrary to both the employer's instructions and a company work rule[3] which the employer had uniformly enforced. He based this conclusion on the fact that the foreman had visited the pumphouse several times a day and the superintendent came by during the course of work, and the conclusion that the statement read at the safety meeting and the instruction to "watch your floor openings" do not meet the definition of a work rule

established by the Commission. We find that the ALJ's findings are supported by substantial evidence, and his conclusions are not arbitrary, capricious, an abuse of discretion or contrary to law.

Having determined that the findings of the ALJ are supported by substantial evidence and that the ALJ's conclusions and the Commission's interpretation of the law are not arbitrary, capricious, an abuse of discretion, or contrary to law, we AFFIRM the Commission's decision.

---

**3.** The Commission has defined a work rule as "an employer directive that requires or proscribes certain conduct, and that is communicated to employees in such a manner that its

mandatory nature is made explicit and its scope clearly understood." *J.K. Builders Inc.,* 5 O.S.H. Cas. (BNA) 1075 (1977).