The CLEVELAND ELECTRIC ILLUMINATING COMPANY, Petitioner,

v.

The OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION; The Secretary of Labor, Elizabeth H. Dole; and Utility Workers of America, Local 270, Respondents.

No. 89–3516.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 9, 1990.

Decided Aug. 10, 1990.

Kenneth B. Stark (argued), Duvin, Cahn & Barnard, Cleveland, Ohio, for petitioner.

Ray Darling, Secretary, Occupational Safety & Health Review Com'n, Washington, D.C., for respondent, Occupational Safety & Health Review Com'n.

Barbara Werthmann, Daniel J. Mick, Patrick D. Gilfillan (argued), Orlando Pannochia, U.S. Dept. of Labor, Office of Sol., Washington, D.C., for respondent, Elizabeth Howard Dole, Secretary of Labor.

Michael J. Coughlin, Utility Workers of America, Local 270, Cleveland, Ohio, for respondent, Utility Workers of America, Local 270.

Before MERRITT, Chief Judge; and KEITH and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

The Occupational Safety and Health Administration ("OSHA") cited The Cleveland Electric Illuminating Company ("CEI") for its failure to provide fall protection in its training program for apprentice electrical mechanics. The citation was based upon a construction industry regulation, 29 C.F.R. § 1926.951. CEI appealed the citation, arguing that the construction regulation did not apply to its training program since it involved no construction and was not located at a construction site. The Occupational Health and Safety Review Commission upheld the citation. Because we conclude that OSHA has failed to establish the nexus between the training activity and a particular construction site as required by *Brock v. Cardinal Industries, Inc.*, 828 F.2d 373 (6th Cir.1987), we reverse the decision and order of the Review Commission

I.

CEI is a public utility supplying electric energy to customers in Northeast Ohio. It operates approximately 215 substations which scale down power from high voltage transmission lines through a system of transformers, and distributes the power to other substations and consumers. The utility employs about 100 electrical mechanics to construct, repair, and maintain these substations.

These mechanics often work on the substations at heights of eighty feet or more. Although a truck with a hydraulic arm is used for most height work, approximately twenty percent of the work requires climbing and walking across the metal frame of the substation structure, called a "bridge," to reach the site of the work to be performed. A bridge is a tunnel-shaped cage made of angle iron which runs between towers. Bridges vary in size from four to six feet high, four to six feet wide, and as much as thirty feet long and are constructed of four-inch angle iron with two-inch angle iron for lattice. Once on the bridge, the mechanics can "tie-off" their safety belts and lines to secure themselves from falling. While moving from position to position on a bridge, however, mechanics are limited in their ability to use safety belts to prevent falling.

CEI operates a formal training program for electrical mechanics at its Clinton Road substation. The program lasts several days and includes instruction on the proper use of safety belts and lines, and two days of structure climbing. Apprentices practice walking the top of a bridge which is twenty-five feet high, with two ropes strung alongside at waist level to assist them with their balance if needed. The ropes are removed one at a time until an apprentice is comfortable crossing the bridge at least twelve times without them. If an apprentice demonstrates proficiency at the twenty-five foot height, he moves to a bridge thirty-six feet high. The process is repeated at the thirty-six-foot level, and the next day over energized equipment at the fifty-five-foot level, with increasingly progressive exercises using a safety belt and lines. Apprentices use safety belts and lines to secure themselves from falling once they have reached a stationary position; but they are not used for fall protection while moving along the bridge.

OSHA cited CEI for failure to provide fall protection to apprentices while in its training program. CEI concedes that it requires apprentices to walk on top of bridges without safety belts and that it does not string safety nets below the bridges, but contends that since these protective devices are often impractical at actual job sites, employees must be trained to work without them.

CEI also maintains that the construction regulations under which it was cited do not apply to its training program since the program does not involve construction and is not conducted at a construction site. OSHA maintains that even though the training program does not involve any actual construction, electrical mechanics are solely responsible for constructing CEI's substations, and since skills learned in the program are necessary and integral to their construction functions, it follows that the training program is construction activity. The Review Commission adopted the latter view and upheld the citation.

## II.

■ The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678, was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). The Act authorizes the Secretary of Labor to establish occupational safety and health standards, 29 U.S.C. § 655, which are binding upon employers engaged in businesses affecting commerce. The Secretary has promulgated Occupational Safety and Health Standards, otherwise known as "general industry standards." *See* 29 C.F.R. Pt. 1910. The Secretary is also authorized to adopt industry-specific standards from other federal statutes and regulations, 29 U.S.C. § 652(10), and did adopt standards for construction work from the Construction Safety Act of 1969, codified at 40 U.S.C. § 333. General industry standards apply to a given working condition unless preempted by corresponding industry-specific standards. *See Brock v. Cardinal Industries, Inc.*, 828 F.2d 373, 376 (6th Cir.1987).

■ OSHA's construction standards, codified at 29 C.F.R. Pt. 1926, apply to "every employment and place of employment of every employee engaged in construction work." 29 C.F.R. § 1910.12(a). " '[C]onstruction work' means work for construction, alteration, and/or repair, including painting and decorating," 29 C.F.R. § 1910.12(b), and expressly includes "the erection of new electric transmission and distribution lines and equipment, and the alteration, conversion, and improvement of the existing transmission and distribution lines and equipment," 29 C.F.R. § 1910.12(d) and 29 C.F.R. § 1926.950(a)(1). CEI's citation was for a violation of subpart V of the construction regulations, which requires fall protection equipment when employees are working at elevated heights.[1]

OSHA does not contend that CEI was erecting new equipment or altering, converting or repairing existing equipment. Rather, it acknowledges that training was the only activity conducted at the Clinton Road substation. OSHA argues, however, that training in structure climbing and bridge walking involves skills which will be necessary to the mechanics' construction functions and is therefore "construction work" within the ambit of the construction regulations. The Review Commission adopted this position concluding that the training program was construction work because it was "an integral and necessary prerequisite to their doing construction work." The Commission has previously held that activities which are related, integral and necessary to construction work and ancillary to construction functions are construction work. *See Royal Logging Co.*, 7 O.S.H. Cas. (BNA) 1744, 1979 (Rev. Comm'n 1979), *aff'd on other grounds*, 645 F.2d 822 (9th Cir.1981); *Bechtel Power Corp.*, 4 O.S.H. Cas. (BNA) 1587 (Rev. Comm'n 1976), *aff'd*, 548 F.2d 248 (8th Cir. 1977). "[A]judicatory conclusions of the Commission can be set aside only when they are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Nat'l Eng'g & Contracting Co. v. Occ. Safety & Health Review Comm'n*, 838 F.2d 815, 817 (6th Cir.1988) (quoting 5 U.S.C. § 706(2)(A)).

In considering what constitutes "construction work," we are not writing on a clean slate. This court previously concluded in *Cardinal Industries* that appreciation of the construction regulations of 29 C.F.R. Pt. 1926 contemplates "some direct and tangible connection or relationship with [a] physical site or location." 828 F.2d at 379. In *Cardinal Industries*, OSHA cited a fabricator of mass-produced modular homes under the "general industry" standards, 29 C.F.R. Pt. 1910, for failure to use guardrails and safety belts and lines. The manufacturer contested the citations arguing that it should have been cited under the construction regulations of

---

1. 29 C.F.R. § 1926.951(b)(1) provides:

    *Personal climbing equipment.* (1) Body belts with straps or lanyards shall be worn to protect employees working at elevated locations on poles, towers, or other structures except where such use creates a greater hazard to the safety of the employees, in which case other safeguards shall be employed.

29 C.F.R. Pt. 1926, which, if applied, would preempt the general industry regulations. Contrary to the position asserted today, in that litigation the Secretary maintained that, for the construction regulations to apply, the employer's activities must have some connection to a particular construction site. The Review Commission disagreed with the Secretary, finding in favor of the manufacturer, concluding that "it is the nature of the work rather than its location that controls." 828 F.2d at 375.

On appeal, this court reversed, concluding that the construction regulations by their own language require that the terms "construction work" and "construction, alteration, and/or repair" be interpreted consistently with those same terms as used in the Construction Safety Act, the Davis–Bacon Act, and the Miller Act. 828 F.2d at 377 (citing 29 C.F.R. §§ 1910.12, 1926.13). Since those terms as used in those Acts require a nexus to a construction site, the construction regulations of part 1926 similarly require "some direct and tangible connection or relationship with [a] physical site." In reaching that conclusion, we specifically rejected the suggestion that the nature of the work itself could be sufficient.

> [W]e conclude that the Review Commission acted arbitrarily and abused its discretion in interpreting the term "construction work" under section 1910.12 as requiring inquiry into the nature of the work, but not its location. The reference [in section 1910.12] to section 1926.13 and the prior consistent interpretations of "construction, alteration, and/or repair" under the Construction Safety and Davis–Bacon Acts make clear that a finding of "construction work" under section 1910.12 requires some nexus to the construction site.

828 F.2d at 379–80.

OSHA contends that *Cardinal Industries* focused on the lack of a relationship between the mass-production manufacturing operation where the homes were constructed and the construction site where the units would be installed by a different company. It argues that the case did not address the relationship between construction and nonconstruction activity within the same entity. The opinion's focus in *Cardinal Industries* was that "construction work" as used in section 1910.12 was consistent with its use in various statutes and regulations, which section 1926.13(d) states are of "considerable precedential value in ascertaining [its] coverage." After reviewing these, we concluded that "[t]he unmistakable import of these provisions is that an operation will be considered 'construction' ... only if the work is performed on, or in close proximity to, the construction site." 828 F.2d at 378. This panel is not at liberty to annul this requirement.

The Secretary admits that no actual construction or repair was being performed at the Clinton Road training site when the citation was issued. The substation does not operate when training is conducted and the mechanics' only activities at the site involve receiving instruction, exercises in structure climbing, and the use of safety equipment. Even if we were to agree that the training in these activities was in the nature of construction work, their activities lack the nexus to a particular construction site required by *Cardinal Industries*. Since the interpretation of the Review Commission is in conflict with a previous decision of this court, its conclusion is not in accordance with law and must be set aside. For these reasons, we reverse the order of the Review Commission.

MERRITT, Chief Judge, dissenting.

The Court makes two errors in reversing the Review Commission and dismissing the citation against petitioner. First, it ignores the deferential review that this Court pays to administrative agencies in enforcing their own regulations. Second, it narrowly construes the application of the construction regulations. This error arises from a misreading of the leading Sixth Circuit case on this issue, *Brock v. Cardinal Industries*, 828 F.2d 373 (6th Cir.1987). Accordingly, I respectfully dissent.

Petitioner trains electrical workers at an unused substation by requiring them to walk on narrow trellises without fall pro-

tection. To give the reader some idea of the danger faced by these workers, I have attached a photograph of the training site, submitted by the parties. The worker has to step precisely on the intersections of the angle irons; one false step and he or she may slip in between the bars and fall 55 feet to the ground. Circus high-wire acts without a net may provide suspense at the Big Top, but trapeze work for employees around live wires at the electric company has little entertainment and no safety value.

The Review Commission found this to be the case. It held that this danger was evident and that the construction regulations apply. We review these findings under an abuse of discretion standard. 5 U.S.C. § 706(2)(A) (1988). This standard of review ensures that courts of appeals properly respect the expertise that the agencies have in their bailiwicks. The Review Commission knows more about workplace safety than do we, and we should not treat the Commission's conclusions lightly.

The majority cites no abuse of discretion that the Review Commission made in reentering the citation. Instead, it only says that the Review Commission's finding violates the *Cardinal Industries* holding. A careful examination of that case reveals this conclusion to be unsound.

In *Cardinal Industries*, the Secretary of Labor cited Cardinal, a manufacturer of prefabricated housing, under the construction work regulations. The question in that case was whether Cardinal, as a manufacturer of houses, fell under the more specific construction work regulations or under the general industry standards. *Cardinal*, 828 F.2d at 376. If only the latter regulations applied, then the Secretary's citation was invalid because it issued under the construction standards and not the general industry standards. A review of the law in this area revealed a logical conclusion to a panel of this Court, namely that Cardinal was not engaged in construction work because the work it did was not connected with a construction site. The reason for this conclusion was obvious: Cardinal engaged in manufacturing. The

fact that it manufactured entire houses did not matter because the activity was manufacturing nonetheless. If the Court had upheld the citation against Cardinal, then manufacturers of doorknobs, ovens, fireplaces, and commodes would be drawn into the construction regulations because they had as much connection with a construction site as Cardinal did.

This holding has no application to the case before us. The work carried on at the training facility is clearly connected with a permanent location. It is also not manufacturing. It is intimately connected with construction. The majority does not hold that OSHA abused its discretion in holding that training activities integral and necessary to the performance of construction work is construction work. Indeed, the majority recognizes cases holding that training for construction or other work intimately connected with construction is construction work under 29 C.F.R. § 1910.12(b) (1989). *E.g., National Eng'g & Contracting Co. v. United States*, 838 F.2d 815, 818 (6th Cir.1987) (per curiam); *Bechtel Power Corp. v. Secretary of Labor*, 548 F.2d 248 (8th Cir.1977) (per curiam) (management employees covered by construction regulations). Rather, it holds that this training is not construction work because it is not connected with a particular construction site. I fail to see why this work is not construction work that falls under the construction work regulations. Training for construction is construction work, the training in this case is associated with a permanent facility, and the workers trained will work on construction work at only certain defined locations (*i.e.*, the petitioner's substations). Unlike the manufacturer in *Cardinal Industries*, we have before us workers engaged in construction work associated with a particular construction site.

Petitioner argues that it would be anomalous to require it to erect fall protection at its training site when the actual work sites have no such protection. This argument is its training for the real world assertion: Workers will freeze on the real substation bridges if they were trained un-

der less than real conditions. Of course, the Review Commission found that petitioner had no evidence for this psychological theory other than the anecdote of one employee. J.A. at 12. This argument also ignores the reason that petitioner need not have fall protection at its substations. Apparently, it would be impractical to have such fall protection. OSHA has interpreted its regulations to allow for an exception to the fall protection regulations if such protection is not feasible. It has apparently found this in 29 C.F.R. § 1926.951(b)(1) (1989), which says that the employer is supposed to use other protection if it cannot use body belts or lanyards. Even if § 1926.951(b)(1) does exempt petitioner from providing fall protection at the substations—and I do not mean that I would so hold were that case presented—petitioner has not shown that fall protection is impractical at the training center. Rather, it attempts to use the impracticality of fall protection at the substations as a means of exempting its training center from the safety regulations, as if the conditions allowing a lack of fall protection were an immutable characteristic of substations. OSHA could conceivably cite petitioner and force it to show why fall protection is not feasible at each of its substations. Presumably, if OSHA could show that one substation could feasibly accommodate fall protection, then petitioner would have to install it. Then its trainees would not need to endure a lack of fall protection at the training site in order to prepare them for the real world of substation work.

The actual practice of the petitioner also belies its assertion that its lack of fall protection at the training site toughens up the trainees for their future job. According to counsel for the petitioner at oral argument, at least one substation has a bridge eighty feet off the ground, and other bridges are one-foot wide I-beams. If petitioner really wanted to train its employees for the hazards they would face on the job, it would include these types of bridges, in height and width, in its training program. Petitioner's anecdote-based psychology of workers also suggests that the petitioner would be justified in creating extra hazards for the trainees to insure that they were ready for the dangers of substation work. Walking on a tightrope over a snake pit like Indiana Jones would prepare one for the lesser danger of the substation, but a "greater danger theory" in worker safety cases confuses risk with reason.