NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0243n.06

Case No. 21-3647

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MAXIM CRANE WORKS, LP, | ) | FILED<br>Jun 15, 2022<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | ON PETITION FOR REVIEW OF |
|  | ) | AN ORDER OF THE |
| OCCUPATIONAL SAFETY & HEALTH | ) | OCCUPATIONAL SAFETY & |
| ADMINISTRATION, U.S. DEPARTMENT OF | ) | HEALTH ADMINISTRATION. |
| LABOR, | ) |  |
|  | ) |  |
| Respondent. | ) | O P I N I O N |

Before: McKEAGUE, GRIFFIN, and READLER, Circuit Judges.

**McKEAGUE, Circuit Judge.** An employee of Petitioner Maxim Crane Works LP fell over nine feet while disassembling a crane for transport to a construction site. Respondent OSHA cited Maxim for violating its regulations requiring fall protection for employees. OSHA generally requires the use of fall protection at heights over four feet; but if employees are disassembling a crane as part of construction work, fall protection is only required for heights above fifteen feet. Maxim appealed the citation, arguing that it was engaged in construction work at the time and was therefore in compliance. The Occupational Safety and Health Review Commission, relying on this court's opinion in *Brock v. Cardinal Industries, Inc.*, 828 F.2d 373 (6th Cir. 1987), held that Maxim was not performing construction work and affirmed the citation. Maxim petitions for

review of that decision. Because we agree with the Review Commission that Maxim's work lacked a sufficient nexus to a particular construction site, Maxim's petition for review is DENIED.

I.

Maxim Crane Works, LP specializes in the rental and sale of crane and lifting equipment. Headquartered in Wilder, Kentucky, it operates locations across the country. Maxim's customer base includes multiple industries, but about 70–75% of its business serves construction industry customers. Relevant to this case is its yard in Ridley Park, Pennsylvania, where Maxim stores and maintains a fleet of primarily crawler cranes for rent to customers in the Philadelphia region.

In April 2017, a team of six employees was disassembling a Manitowoc 14000 crawler crane in preparation for transport. The Manitowoc 14000 consists of a superstructure—a substantial car body with treads—and a boom made up of multiple segments of latticed steel. The boom segments are eight feet wide, eight feet high, and forty feet long at their longest. For transport to a customer's site, Maxim must disassemble it into multiple tractor trailer loads—large enough to require state permits for oversized loads. Such disassembly usually takes two to three days. This particular Manitowoc had been assembled for operation at the Ridley Park yard after returning from the last customer. Maxim would use cranes around its yard for loading and unloading and inventory management. The Manitowoc was disassembled for transport to a construction site in New Jersey operated by Maxim's customer, Durr Mechanical. Once it reached the Durr Mechanical site, Maxim's employees were to assemble and operate the crane on that location.

During disassembly, one of Maxim's employees fell from the top of a section of boom while at a height of nine and a half feet. None of Maxim's team were using any method of fall

protection while disassembling the crane. He was hospitalized, suffering a concussion, a fractured skull and scapula, and multiple lacerations.

Maxim reported the incident to the Occupational Safety and Health Administration via their hotline. Four days later, an OSHA Compliance Officer inspected Ridley Park. OSHA then issued a Two-Item Citation and Notification of Penalty to Maxim, for a total penalty of $25,350. At issue in this petition, Item 1 was for a serious violation of 29 C.F.R. § 1910.28(b)(1)(i) for failing to ensure employees used fall protection while working more than four feet above the next highest surface.

Maxim contested the citation, and a hearing was held before the Chief Administrative Law Judge ("ALJ") in October 2018. In January 2020, the ALJ issued a decision affirming both citations and the proposed penalty. Maxim then petitioned the Occupational Safety and Health Review Commission for discretionary review. The Review Commission granted the petition to review only Item 1 of the citation, directing the parties to brief whether the cited general standard was preempted by the more lenient construction industry-specific standard, and specifically asked the parties "to discuss the Sixth Circuit's decision in *Brock v. Cardinal Indus., Inc.*, 828 F.2d 373 (6th Cir. 1987)." Supp. App'x 186. In May 2021, the Review Commission issued its decision affirming the ALJ. *See Maxim Crane Works, LP*, No. 17-1894 (OSHRC May 20, 2021). Maxim then brought this petition for review pursuant to 29 U.S.C. § 660(a).

## II.

This court has jurisdiction to review Maxim's timely petition for review pursuant to 29 U.S.C. § 660(a). We review the Review Commission's findings of fact for substantial evidence. 29 U.S.C. § 660(a). The Review Commission's conclusions of law are set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706(2)(A); *CMC Elec., Inc. v. Occupational Safety & Health Admin., U.S. Dep't of Lab.*, 221 F.3d 861, 865 (6th Cir. 2000). "We interpret the applicable regulations as we would a statute, and defer to the Secretary's interpretation only if a regulation's meaning remains unclear after 'exhaust[ing] all the traditional tools of construction.'" *Lake Bldg. Prods., Inc. v. Sec'y of Lab.*, 958 F.3d 501, 504 (6th Cir. 2020) (alteration in original) (quoting *Kisor v. Wilkie,* -- U.S. --, 139 S. Ct. 2400, 2415 (2019)).

III.

A.

Maxim's petition turns on a single issue: whether the disassembly of its Manitowoc crane at its yard in Ridley Park, Pennsylvania constituted construction work for purposes of OSHA's regulations. OSHA argues that Maxim was properly cited under its general regulation requiring fall protections at heights above four feet, 29 C.F.R. § 1910.28(b)(1)(i). Maxim argues that the specific standard for the construction industry, 29 C.F.R. § 1926.1423(f), should be applied instead, which only requires fall protections at heights above fifteen feet.

Maxim does not dispute that the general standard applies to its disassembly. It instead argues that the construction standard also applies, and where two standards apply to given work, the industry-specific standard controls. *See* 29 C.F.R. § 1910.5(c)(1). Maxim's preferred standard falls within a part of OSHA's regulations pertaining to "Cranes and Derricks in Construction." *See* 75 Fed. Reg. 47,906-01, 47,906 (Aug. 9, 2010). These regulations, and the other construction-specific regulations within 29 C.F.R. § 1926, are incorporated as occupational safety and health standards applicable to "every employment and place of employment of every employee engaged in construction work." 29 C.F.R. § 1910.12(a). This provision incorporating the § 1926

construction regulations, § 1910.12, defines construction work as "work for construction, alteration, and/or repair, including painting and decorating." 29 C.F.R. § 1910.12(b).

We have confronted the question of whether an employee was engaged in construction work for purposes of OSHA's regulations before. In *Brock v. Cardinal Industries*, the Secretary of Labor sought review of a Review Commission decision interpreting § 1910.12. 828 F.2d 373, 375 (6th Cir. 1987), *abrogated on other grounds by Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144 (1991). Cardinal Industries built prefabricated homes and was cited by OSHA for violating a general standard. *Id.* at 374–75. It appealed the citation to the Review Commission, arguing that its employees were engaged in construction work and that therefore a construction industry standard applied, preempting the general standard. *Id.* at 375. The Review Commission looked to the nature of the work performed, concluded that it was construction work, and vacated the citation. *Id.* The Secretary sought review, and we reversed. *Id.* at 380.

Looking to the text of § 1910.12, we determined that the primary function of the employer's business and the nature of the work performed were not alone sufficient for work to be construction. *See id.* at 375–79. In its definition of construction work, § 1910.12 refers to "discussion of" the terms "construction, alteration, and/or repair" in 29 C.F.R. § 1926.13. 29 C.F.R. § 1910.12(b). Section 1926.13, in turn, notes that the "use of the same or identical terms" in the Davis-Bacon Act and the Miller Act have "considerable precedential value" in "ascertaining the coverage" of OSHA's construction regulations. 29 C.F.R. § 1926.13(a). We concluded that these cross references must be taken into account when interpreting the meaning of construction work in § 1910.12. *Cardinal Indus.*, 828 F.2d at 378–79.

The regulations that interpret similar terms in the Davis-Bacon Act limit construction work to "work done on a particular building or work at the site thereof." 29 C.F.R. § 5.2(j)(1). A site

of work is limited to "the physical place or places where the building or work called for in the contract will remain; and any other site where a significant portion of the building or work is constructed." 29 C.F.R. § 5.2(*l*)(1). These regulations, we acknowledge, may differ in some respects from the definition of construction work in § 1910.12. *See CH2M Hill, Inc. v. Herman*, 192 F.3d 711, 719 (7th Cir. 1999) (holding that construction industry regulations may apply to certain professionals who fall outside the Davis-Bacon Act regulations). Yet the Davis-Bacon Act regulations, by the terms of § 1926.13, have "considerable precedential value" in defining construction work in § 1910.12. By reading § 1910.12 in the context of these regulations and other interpretations of construction work, we concluded that "a finding of 'construction work' under section 1910.12 requires some nexus to the construction site." *Cardinal Indus.*, 828 F.2d at 380. We explained that "construction work necessarily implies some direct and tangible connection or relationship with the physical site or location of the structure." *Id.* at 379.

Applying this requirement to Cardinal's work, we held that it lacked a sufficient nexus to a construction site. *Id.* at 380. Cardinal itself admitted that its production facility was not a construction site. *Id.* And its work bore no connection to any specific site where the prefabricated homes would be installed. *Id.* Absent "a nexus between the work and the construction site," only the general standard applied. *Id*. at 379–80.

In a footnote, we explained that the factors considered by the Review Commission, such as the nature of the work performed and the primary function of the employer's business, would be relevant to this inquiry only after a locational nexus was established. *Id.* at 380 n.11.

*Cardinal Industries* thus establishes a two-step inquiry. First, the reviewer must determine that there is "some nexus to the construction site." *Id.* at 380. Second, the work must be integral and necessary to construction work, considering factors like the nature of the work performed and

the employer's primary function. *Cleveland Elec. Illuminating Co. v. Occupational Safety & Health Rev. Comm'n*, 910 F.2d 1333, 1335 (6th Cir. 1990); *Cardinal Indus.*, 828 F.2d at 380 n.11.

Maxim suggests that we should hold "*Cardinal* to its facts" and decide this case on other grounds. Pet'r's Br. at 10. Maxim points to our opinion's reliance on Cardinal's concession that its manufacturing facility was not a construction site, and it notes that Maxim's preferred regulation was enacted many years after we decided *Cardinal Industries*. But Cardinal's concession was only relevant after we examined § 1910.12 and determined that a locational nexus was required by the regulations. *See Cardinal Indus.*, 828 F.2d at 379. And Maxim's preferred standard only applies to employers and employees via § 1910.12. We are not at liberty to ignore the holdings of prior published opinions of this court. *See Worldwide Equip. of TN, Inc. v. United States*, 876 F.3d 172, 181 (6th Cir. 2017); *see also Cleveland Elec. Illuminating Co.*, 910 F.2d at 1336 (applying the *Cardinal Industries* nexus requirement). *Cardinal Industries* controls this case.

B.

Here, the first prong of the *Cardinal Industries* test—the nexus requirement—is dispositive. All parties acknowledge that the Ridley Park yard is not itself a construction site. The only question is whether the disassembly nevertheless had a sufficient connection to a particular construction site. *Cardinal Indus.*, 828 F.2d at 380. Because Maxim's disassembly lacked such a nexus, its employees were not engaged in construction work, and OSHA properly applied § 1910.28(b)(1)(i).

In holding that Maxim's work lacked a nexus, the Review Commission first observed that Maxim's Ridley Park, Pennsylvania yard "is neither a construction site nor near the New Jersey construction site." *Maxim Crane Works, LP*, No. 17-1894, 2021 WL 2311880 at *3 (OSHRC May 20, 2021). Rather, "Maxim's crane disassembly on the day of the accident took place at its

maintenance yard." *Id.* at *4. The Commission further found that the work Maxim performed was routine and not customized to a particular construction site. *See id.* at *3. We agree. Maxim regularly engaged in assembly and disassembly of cranes at Ridley Park for reasons unrelated to construction. *Cf.* 29 C.F.R. § 5.2(*l*)(3) (stating that "permanent, previously established facilities are not part of the site of the work" for purposes of the Davis-Bacon Act). Although this disassembly was in preparation for transport to a construction site, it was the same work that would have been conducted if the crane were to be sent to a nonconstruction customer or to storage. As the Review Commission found, nothing about the disassembly—other than its intended customer—distinguished this disassembly from any other. Nor is Maxim's maintenance yard adjacent to Durr Mechanical's construction site. Indeed, the Durr Mechanical site is in New Jersey, across the Delaware River from Maxim's facility. And "no actual construction or repair was being performed" at Maxim's maintenance yard when the accident occurred. *Cleveland Elec. Illuminating Co.*, 910 F.2d at 1336. The crane's disassembly thus lacked a "direct and tangible connection or relationship" with the construction site. *Cardinal Indus.*, 828 F.2d at 379.

Maxim argues that, because the work was conducted on a schedule required by its agreement with Durr Mechanical and because its employees were to operate the crane at the construction site, it nevertheless had a sufficient nexus to the Durr Mechanical site. But performing the work in anticipation of a particular project does not mean that the work had a "direct and tangible connection or relationship with the physical site or location of the structure" being built. *Cardinal Indus.*, 828 F.2d at 379. Had Durr Mechanical cancelled its contract, the disassembled Manitowoc could have been stored or sent to a nonconstruction customer. Similarly, Maxim employees' future operation of the crane does not affect whether the disassembly was connected to the Durr Mechanical site.

Maxim also argues that its disassembly work was not routine because of the complexity of the undertaking.  It is clear from the record that disassembling a Manitowoc 14000 is not a simple task.  But despite the difficulty of disassembly, it is the same task Maxim performs regardless of the customer or use of the crane.  It does not undermine the Review Commission's finding that Maxim's disassembly was routine in that it was not customized to the particular construction site.

Because we hold that Maxim's disassembly work lacked a sufficient connection to a specific construction site, we need not evaluate whether the work performed was "integral and necessary" to the construction project.  *Cleveland Elec. Illuminating Co.*, 910 F.2d at 1335–36.  OSHA's general four-foot fall protection standard applies.  Thus, Maxim was not in compliance because it failed to provide the required fall protection.

IV.

Maxim's petition is therefore DENIED.