RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0139p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LAKE BUILDING PRODUCTS, INC.,

*Petitioner*,

*v.*

SECRETARY OF LABOR; OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION,

*Respondents*.

No. 19-3212

───────────────

On Petition for Review
of an Order of the Occupational Safety & Health Administration;
No. 16-1300.

Argued:  December 12, 2019

Decided and Filed:  May 6, 2020

Before:  GILMAN, KETHLEDGE, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Andrew R. Kaake, WOOD + LAMPING LLP, Cincinnati, Ohio, for Petitioner. Jessica L. Cole, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.  **ON BRIEF:**  Andrew R. Kaake, WOOD + LAMPING LLP, Cincinnati, Ohio, for Petitioner.  Anne R. Godoy, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

───────────────

## OPINION

───────────────

KETHLEDGE, Circuit Judge.  Lake Building Products, a steel-erection company, challenges the Occupational Safety and Health Review Commission's conclusion that Lake

Building violated a regulation requiring certain workers to use equipment protecting them from falls. Although we agree with the Commission's interpretation of the relevant regulation, we conclude on this record that Lake Building lacked fair notice of that interpretation. We therefore grant the petition.

I.

A.

At issue in this case is a safety regulation applicable to the construction of steel-framed buildings. As a building's structure rises above ground level, cranes hoist and then swing into place loads of structural material that often weigh thousands of pounds. Workers engaged in this kind of construction—known as ironworkers—help to place these loads in precise positions on the building structure. Ironworkers also climb steel columns and move from point to point on elevated steel beams.

The Occupational Safety and Health Administration promulgates safety regulations applicable to the steel-erection industry. *See* 29 U.S.C. § 651(b). To that end, in 1994, OSHA established the Steel Erection Negotiated Rulemaking Advisory Committee, which included members "from labor, industry, public interests and government agencies." Safety Standards for Steel Erection, 66 Fed. Reg. 5196, 5197 (Jan. 18, 2001). Those members then negotiated for 18 months before recommending safety regulations for the steel-erection industry.

OSHA's regulations generally require ironworkers to use fall protection whenever working above a height of 15 feet. *See* 29 C.F.R. § 1926.760(a)(1). But the Advisory Committee recommended an exception to that rule for workers known as "connectors," who are specially trained to work with incoming loads from hoisting equipment. Ironworkers who appeared before the Advisory Committee "uniformly stated that they needed to remain unencumbered when they were working with hoisting equipment and some members recounted personal experiences where they were able to escape collapses and incoming steel only because they were not tied off." 66 Fed. Reg. at 5246; *see also id*. ("The ability to move without restraint in order to get away from incoming loads is also stated as a reason for connectors not to tie off"). Accordingly, the final regulation exempted from the fall-protection requirement any

ironworker—at heights between 15 and 30 feet—who is working as a "connector," which the regulation defines as "an employee who, working with hoisting equipment, is placing and connecting structural members and/or components." 29 C.F.R. § 1926.751.

### B.

Lake Building Products manufactures steel-framed buildings. In June 2016, in Akron, Ohio, two of Lake Building's employees were working atop the steel frame of a partially completed building, 28 feet above the ground. The employees were wearing safety harnesses that, if anchored to the building, would prevent them from falling. But they had chosen to remain unanchored while they worked with a crane to place bundles of steel decking. Sometime later, the ironworkers would connect that decking to the building's frame to form its roof.

A compliance officer from OSHA saw the workers and thought that their failure to anchor their harnesses was a violation of OSHA's fall-protection regulations. The on-site foreman disagreed, asserting that those workers were "connectors." Yet the officer—who later acknowledged his own lack of experience with the steel-erection regulations, *see* Joint App. at 224–25—wrote up a citation against the company anyway. Lake Building contested the citation, but an Administrative Law Judge upheld it on the ground that the workers were only "placing" the decking bundles—rather than "placing and connecting" them, 29 C.F.R. § 1926.751—and thus were not "connectors" as defined by the regulation. The Occupational Safety and Health Review Commission declined to review the ALJ's decision, which made it a final order of the Commission. Lake Building then petitioned for review in this court.

### II.

We review the Commission's factual findings for substantial evidence. *See* 29 U.S.C. § 660(a). We interpret the applicable regulations as we would a statute, and defer to the Commission's interpretation only if a regulation's meaning remains unclear after "exhaust[ing] all the traditional tools of construction." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (internal quotation marks omitted).

The traditional tools answer the interpretive question here. The Occupational Safety and Health Act requires employers and employees to comply with OSHA regulations. 29 U.S.C. § 654(a)(1)–(2). Here, the relevant regulation is 29 C.F.R § 1926.751, which, as noted above, defines a "connector" as an "employee who, working with hoisting equipment, is placing and connecting structural members and/or components." Lake Building argues that the employees at issue were connectors because they were working with hoisting equipment to place structural members, namely the bundles of steel decking. Thus, according to Lake Building, an employee is a connector when he is *either* "placing" *or* "connecting" structural members. In effect, Lake Building reads "placing and connecting" to mean "placing and/or connecting"; the Commission, in contrast, reads the same phrase to mean that a worker is a connector only when he is doing both of those things.

Sometimes "[s]loppy drafting . . . leads courts to recognize that *and* in a given context means *or*[.]" Bryan A. Garner, *A Dictionary of Modern Legal Usage* 55 (2d ed. 1995). But ordinarily we read "and" to have a conjunctive meaning, which is the meaning the Commission assigns it here. *See OfficeMax Inc. v. United States*, 428 F.3d 583, 588 (6th Cir. 2008). And here the regulation uses both "and" (as in "placing and connecting") as well as "and/or" (as in "structural members and/or components") in the very same sentence, which shows that when OSHA meant "and/or" it knew how to say so. *See, e.g.*, *FTC v. Sun Oil Co.*, 371 U.S. 505, 514–15 (1963); 29 C.F.R. § 1926.751. The regulation therefore requires that an employee be both "placing and connecting" to be a "connector."

Lake Building points to several authorities beyond the regulation's text to support its interpretation. First, the regulation's preamble says that "an employee is a connector only when working with hoisting equipment." 66 Fed. Reg. at 5203 (internal quotation marks omitted). But the regulation itself makes clear that "working with hoisting equipment" is only a necessary condition for a worker to qualify as a connector, not a sufficient one. *See* 29 C.F.R. § 1926.751.

Second, Lake Building cites two other administrative decisions. In one, an ALJ classified as a "connector" an employee who worked with hoisting equipment while placing components that would be connected "later." *Sawyer Steel Inc.*, 21 BNA OSHC 1196 (No. 04-0429, 2004). That is the same scenario that the ALJ described here. *See Sec'y of Labor v. Lake Bldg. Prods.*,

2018 WL 7080226, at *4 (O.S.H.R.C. Dec. 13, 2018) (reciting that "[n]othing would be done with these decking bundles until later"). In the other decision, California's Division of Occupational Safety and Health interpreted verbatim the same definition of "connector"—there, as set forth in California's occupational-safety regulations—to have the same meaning that Lake Building assigns that definition here. *See In re Anning-Johnson Co.*, Ca. OSHA Dkt. No. 06-R1D3-1976, 2012 WL 470134 (Jan. 13, 2012). But the reasoning of those decisions provides no basis to construe the actual text of the regulation any differently than we have here.

What those decisions do support, however, is Lake Building's argument that it lacked fair notice of the Commission's interpretation of "connector" as used in 29 C.F.R. § 1926.751. *See Ohio Cast Prods., Inc. v. Occupational Safety & Health Review Comm'n*, 246 F.3d 791, 798–99 (6th Cir. 2001). In determining whether an employer had "adequate notice" of the Commission's interpretation of a regulation, we consider the following: whether the regulation is "inartful[ly]" drafted; "common understanding" of the regulation and "commercial practice"; and the "pattern of administrative enforcement." *Id.* at 799. Here, the regulation's drafting is indeed less than "artful" to the extent it requires that an ironworker be both "placing and connecting" a structural member to be a "connector." Presumably an ironworker cannot do both of those things simultaneously. Thus, to honor OSHA's use of the conjunctive "and"—while construing the regulation not to require an impossibility—one must require only a certain temporal proximity between the placing and connecting. (The ALJ expressly recognized as much. *See Lake Bldg. Prods.*, 2018 WL 7080226, at *8.) Here, we need not determine exactly what that temporal proximity must be, since the decking bundles at issue were not connected until weeks later. *See id.* at *4. That the regulation could not mean what it literally said, however, did create uncertainty regarding what it meant; and Lake Building, unlike this court, was not required to "exhaust all the traditional tools of construction" to resolve that uncertainty. *Kisor*, 139 S. Ct. at 2415.

Moreover, Lake Building did present significant evidence—including testimony from its expert witness, Steven Rank, who is the Executive Director of Safety and Health at the Iron Workers Union, and who was himself a member of the Advisory Committee that recommended this regulation—that industry practice is to regard ironworkers who are only "placing" structural

members or components of a building as "connectors." Joint App. at 326, 329. And Rank further testified that the industry makes use of a training video (which Rank himself helped create) that depicts ironworkers placing bundles without anchoring their fall protection—which is to say that it depicts such workers as connectors. *Id.* at 349. In addition, as noted above, the only extant authority with respect to the meaning of the regulatory text at issue here construed it precisely as Lake Building did. Finally, in the 15 years between the effective date of this regulation and the citation at issue here—years in which, the record strongly suggests, many building companies and ironworkers read § 1926.751 the same way that Lake Building did—the Commission enforced the regulation the way that it did here only once. Indeed the Secretary impliedly admits as much. *See* Sec'y Br. at 42. And on that one occasion, the administrative law judge vacated that citation in *Sawyer Steel*. We therefore conclude that Lake Building did not have adequate notice of the interpretation that gave rise to the citation here. *See*, *e.g.*, *Diebold Inc. v. Marshall*, 585 F.2d 1327, 1336–37 (6th Cir. 1978).

Finally, we acknowledge Lake Building's emphatic argument—and the ironworkers' testimony before the ALJ—that the Commission's interpretation of § 1926.751 will only increase the hazards for ironworkers who are placing, but not yet connecting, structural members or components while "working with hoisting equipment." But that dispute is one for resolution by OSHA or the Secretary himself.

\* \* \*

We grant the petition and vacate the citation and penalty.