NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0019n.06

No. 25-3037

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 09, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| SOFIDEL AMERICA, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | OCCUPATIONAL SAFETY |
| | ) | AND HEALTH REVIEW |
| LORI CHAVEZ-DEREMER, Secretary of Labor, | ) | COMMISSION |
| Respondent. | ) | |
| | ) | OPINION |

Before: CLAY, KETHLEDGE, and LARSEN, Circuit Judges.

KETHLEDGE, Circuit Judge. After a worker was injured at an Ohio factory, OSHA cited the factory's operator—Sofidel America—for several safety violations. The Occupational Safety and Health Review Commission upheld the citations, and Sofidel now petitions for review of the Commission's order. We grant the petition.

I.

Sofidel operates a paper-products factory in Circleville, Ohio, where it makes toilet paper, and other household products, for Costco and other sellers. In the factory's converting department, large rolls of toilet paper, weighing several tons apiece, are unwound, embossed, and then rewound around cardboard cores and cut into small rolls (thereby being "converted" into a finished consumer product). To unwind and rewind the toilet paper, Sofidel uses the R88 Rewinder—a large machine that frequently jams because of toilet paper's low tensile strength.

When the R88 Rewinder jams, it automatically shuts down. To clear a jam, an employee enters the machine through an "interlock door." Opening that door deenergizes the machine—except for its "jog function," which allows the employee to slowly move the machine's rollers, either forward or in reverse, from inside the machine. When the machine is jogged forward, an alarm sounds three times before it begins to move; but when jogged in reverse, no alarm sounds and the machine begins to move immediately. The sole reverse jog button is located on the primary internal control panel some distance from the machine's rollers. One forward jog button is located on that panel, and another is placed on a deadman switch immediately adjacent to the rollers. Sofidel's stated policy was to prohibit two employees from entering the machine at the same time to jog it—a "two-man jog"—to avoid "someone pushing the button while someone else has their hand in a dangerous part of the machine."

On September 21, 2022, Christian Hill, a factory employee, was operating the R88 Rewinder when it jammed. He and an assistant operator, Dezmond Perkins, went inside to clear it. While Hill stood by the machine, he told Perkins to jog the machine in reverse: Perkins did, and the machine started "instantly"—which Hill later said "surprised" him, because he was "expecting a beep, but there was none." When the machine started, Hill's hand became caught in a "pinch point between the lower roller and a metal guide plate," causing a "degloving injury" to his left hand. He was then taken to the hospital and underwent emergency surgery.

Sofidel reported the injury to OSHA, which investigated and cited Sofidel for several violations of workplace-safety standards. An administrative law judge (ALJ) held an evidentiary hearing and affirmed the citations. Sofidel then petitioned the Occupational Safety and Health Review Commission for discretionary review, which it denied, making the ALJ's opinion a final order of the Commission. *See* 29 U.S.C. § 661(j). This appeal followed.

II.

We review the factual findings in the Commission's order for substantial evidence. *See* 29 U.S.C. § 660(a). We interpret the applicable regulations as we would a statute, and defer to the Secretary's interpretation only if a regulation's meaning remains unclear after exhausting all the traditional tools of construction. *Lake Bldg. Prods., Inc. v. Sec'y of Lab.*, 958 F.3d 501, 504 (6th Cir. 2020).

On appeal, Sofidel contests two of its alleged violations of 29 C.F.R. §1910.147—the so-called lockout/tagout (LOTO) standard. Under that standard, employers must ensure that their employees "lockout" or "tagout" a machine whose "*unexpected* energization or start up" "could cause" them injury while they perform certain "servicing" or "maintenance" activities on it. 29 C.F.R. §1910.147(a)(1)(i). Put simply, to "lockout" a machine is to place a device in it that prevents it from energizing; to "tagout" a machine is to place a prominent warning device on it, alerting others that the machine is being serviced. *See* 29 C.F.R. §1910.147(b).

Sofidel challenges the ALJ's affirmance of Item 3 of the citation, which charged that Sofidel had failed to ensure that its employees "utilized" LOTO procedures while unjamming the R88 Rewinder. To establish that an employer has violated an OSHA standard, substantial evidence must support, among other things, a finding that the employer "knew" of a "hazardous condition," or "could have known" of it "with the exercise of reasonable diligence." *Mountain States Contractors, LLC v. Perez*, 825 F.3d 274, 279 (6th Cir. 2016) (citation modified). "The knowledge of a supervisor or foreman" can, under certain circumstances, be "imputed to the employer." *Id.* at 283. Sofidel contends that substantial evidence did not support the ALJ's finding that Sofidel knew, through one of these employees, that its workers routinely failed to lockout or tagout the R88 Rewinder when servicing it.

We can uphold the Commission's order only for the reasons it gave when it made its decision. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88-89 (1943). Here, the ALJ's opinion fails to expressly identify the "hazardous condition" that Sofidel knew or should have known of, for purpose of this citation. *Perez*, 825 F.3d at 279. Specifically, on the face of the opinion, it is unclear if the ALJ determined that all methods for unjamming the Rewinder were "hazardous conditions" or if only certain types of unjamming so qualified. When the ALJ found the LOTO standard applicable to reverse jogging during unjamming activities, however, she cited Hill's testimony about his injury from two-man jogging. *See* ALJ Op. at 11. The remaining citations in that discussion do not describe an alternative mechanism of injury nor describe a hazardous condition apart from the specifics of Hill's accident. We thus conclude that the ALJ found only that two-man jogging—and no other methods of unjamming—carried a risk of injury by unexpected energization, and so was the relevant hazardous condition here. For the citation to be upheld, therefore, the ALJ's opinion must have cited substantial evidence to support the finding that Sofidel knew—actually or constructively—that its employees were performing two-man jogs (despite company policy) and were not using LOTO procedures while doing so.

The only dispute here is whether Sofidel knew that its employees were performing two-man jogs. On that point, the ALJ found that Sofidel's management—and thus the company— "knew the R88 Rewinder was energized and not locked out when operators attempted to unjam it." ALJ Op. at 13. In support of this conclusion, the opinion cited testimony from three Sofidel employees (who Sofidel concedes were managers): Boone Sabine, Randy Kuhner, and Jacob Giammarino. *Id.* at 13-14. Sabine testified that the jog function would remain online when the interlock door was opened. Kuhner testified that, in his opinion, if an employee "engaged in a two-person jog," a "verbal warning" might be sufficient discipline; that Sofidel's LOTO policy

required that the R88 Rewinder be locked out or tagged out while being serviced; and that the policy covered the machine's unjamming. And Giammarino testified that, "when an operator goes into the machine" to clear out a jam, "lockout-tagout does not apply."

This evidence does not actually establish that Sofidel knew or should have known that its employees had ever failed to lockout and tagout the R88 Rewinder while unjamming it, let alone specifically during a two-man jog. Giammarino's testimony that he did not think the LOTO standard applied "when an operator goes into the machine and is clearing out a jam" does not even address two-man jogs. Nor does his testimony, even together with the other testimony the ALJ cited, establish that Sofidel should have known that its employees failed to use LOTO procedures when required. Hence Item 3 of the citation cannot be upheld on the basis of the ALJ's opinion. *See Chenery*, 318 U.S. at 88-89.

Sofidel next argues that the ALJ failed to justify her affirmance of the violation alleged in Item 4, which charged that it "did not ensure that each employee" performing "covered tasks" on the R88 Rewinder "receive[d] training," in violation of 29 C.F.R. § 1910.147(c)(7)(i)(A). That training standard requires that "authorized employees"—those who perform "servicing or maintenance" using LOTO procedures, or who work on or near a machine being serviced using LOTO procedures and whose "duties include performing servicing or maintenance covered under this section"—receive more extensive training on LOTO procedures than do other employees. 29 C.F.R. § 1910.147(b).

Here, the ALJ found that Hill and other operators of the R88 Rewinder were "authorized employees" within the meaning of §1910.147(b). But that finding requires substantial evidence either that these employees actually use LOTO procedures when servicing the R88 Rewinder or that their "duties" include "performing servicing or maintenance covered under this section."

29 C.F.R. § 1910.147(b). Sofidel, at least officially, prohibited two-man jogging—again, the only method of "servicing" that the ALJ could have plausibly found was "covered under this section"— which means that, officially at least, none of these employees' "duties" could have included a covered activity. True, if Sofidel de facto tolerated servicing by means of two-man jogs, then Hill and other operators of the machine would be "authorized employees" as to that servicing, which means the training standard (§1910.147(c)(7)(i)(A)) would have applied to them. As with the other citation, however, a finding that Sofidel tolerated two-man jogging required proof that Sofidel knew about that practice. And—as explained above—the ALJ's opinion itself did not describe, evaluate, or even cite testimony amounting to substantial evidence for that finding. We therefore cannot uphold this citation based on the ALJ's opinion.

\* \* \*

We grant the petition for review, set aside the Commission's order with respect to Items 3 and 4, and remand to the Commission for further proceedings consistent with this opinion.